**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| NATIONAL COUNCIL OF PRISON LOCALS et al., | : | No.: 3:25cv1907 (VDO) |
| Plaintiffs, | : | |
| v. | : | |
| FEDERAL BUREAU OF PRISONS et al., Defendants. | : | October 2, 2026 |

**DEFENDANTS' NOTICE OF COMPLIANCE**

On September 29, 2026, this Court issued a Memorandum & Order ("Order") entering a preliminary injunction in Plaintiffs' Administrative Procedure Act ("APA") challenge to Defendants' decision to terminate the collective bargaining agreement ("CBA") that the Federal Bureau of Prisons ("BOP") held with National Council of Prison Locals, American Federation of Government Employees ("CPL-33"). *See* Order, p. 2, ECF No. 72. That Order states, in part:

> The September 25, 2025, termination of the CBA is preliminarily set aside and enjoined. Defendants shall immediately reinstate the CBA for the remainder of the agreed-upon term provided in the CBA, and shall be governed by the terms of that agreement. Defendants shall also reinstate any amendments, local supplemental agreements, and memoranda of understanding that were in place subsidiary to the CBA.

*Id*. Defendants are aware of the Court's Order and aver they are complying with its terms. *See* October 2, 2026, Memorandum from Malia Wilber, Assistant Director, Human Resource Management Division, attached hereto as Exhibit 1 ("Wilber Memorandum"). Defendants understand the injunction to require that BOP immediately reinstate the CBA. Defendants, however, do not understand the injunction to constrain the BOP from re-terminating the CBA in a fresh decision before its May 28, 2029, expiration because Plaintiffs did not request that relief and

that relief would not be appropriate based on the theory on which the Court found a likelihood of success for Plaintiffs. The Court alluded to this issue at the preliminary injunction motion hearing:

> THE COURT: You brought up Rhode Island. What do you think would prevent the government from -- if the Court imposes the preliminary injunction here going back, reworking its reasoning and reterminating the CBA and then having a hearing of the sort that was before His Honor in Rhode Island, or Her Honor in Rhode Island, I should say?

PI Mot. Hearing Tr., pp. 32, 67-68.

Defendants also do not understand the injunction's language stating that "Defendants … shall be governed by the terms of that agreement" to extend to supervising Defendants' performance of its collective-bargaining duties under that CBA. As highlighted in Defendant's Notice of Supplemental Authority, ECF No. 60, in *AFGE Loc. 2305 v. United States Dep't of Veterans Affs*., the First Circuit reviewed the Government's motion to stay two district court orders concerning the termination of a CBA and agreed with the Government's assertion that the district court's enforcement order was a "'compliance' directive[1] . . . utterly foreign to any type of labor-relations or contract suit that Congress has authorized and represents a significant intrusion on the Executive Branch." 177 F.4th 1, 19 (1st Cir. 2026) ("AFGE" or "the VA Case"). The First Circuit further concluded that "an order that requires the CBA's reinstatement would not itself entail that the District Court could police the enforcement of the agreement's terms in the manner that the enforcement order's 'compliance' requirement contemplates." *Id*. Defendants assume this Court's Order does not mean the district court intends to supervise every alleged failure to perform a CBA

[1] "The [Rhode Island] District Court . . . 'order[ed] and instruct[ed]' that '[t]he [d]efendants' reinstatement of and compliance with the . . . CBA . . . be in both form and substance.' It further directed the defendants to continue processing 'the currently pending grievances and arbitrations submitted under the . . . CBA.'" *AFGE*, 177 F.4th at 4 (emphasis in original).

term but, out of an abundance of caution, Defendants are making clear their interpretation of the injunction.

## I. BACKGROUND

The Court is very familiar with the facts of this case. To summarize, the Federal Service Labor-Management Relations Statute ("FSLMRS") authorizes the President to exempt from its coverage "*any* agency or subdivision thereof" if the President makes the determination that (A) "the agency . . . has as a primary function intelligence, counterintelligence, investigative, or national security work," and (B) the provisions of the statute "cannot be applied to that agency . . . in a manner consistent with national security requirements and considerations." 5 U.S.C. § 7103(b)(1) (emphasis added). Like most Presidents before him, on March 27, 2025, President Trump issued such an order. Specifically, in Executive Order 14,251, *Exclusions from Federal Labor-Management Relations Programs* ("the EO"), the President made the required determinations, thereby excluding from statutory coverage the identified agencies and agency subdivisions including, as relevant here, the DOJ, which includes the BOP.

On September 25, 2025, the Director of the BOP notified CPL-33 that "[a]s a result" of "the President's broad authority under 5 U.S.C § 7103(b)(l) to exempt agencies" including the DOJ—and "based on the EO [14,251]"—the BOP "no longer recognizes [CPL-33] as the exclusive representative for employees of the existing bargaining unit." ECF No. 28-5.

On November 13, 2025, Plaintiffs, CPL-33 and Local 1661, filed this action. *See* Complaint, ECF No. 1 ("Compl."). Plaintiffs advance two causes of action, both of which state they fall under the APA's "scope of review" for an agency decision. First, they argue that the BOP's ending of the CBA between the BOP and CPL-33 was arbitrary and capricious, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). Compl. ¶¶ 56–65. Second,

Plaintiffs argue that the BOP decision was in violation of the APA, 5 U.S.C. § 706(2)(B), because it represented impermissible retaliation in violation of the First Amendment. Compl. ¶¶ 66–70. For relief, Plaintiffs request that this Court enter a permanent injunction prohibiting Defendants from effectuating the termination of the CBA. *See* Compl., p. 17.

On December 22, 2025, Plaintiffs filed their preliminary injunction ("PI") motion. *See* ECF No. 28-1 (PI Memo). On February 13, 2026, Defendants filed a motion to dismiss. *See* ECF No. 40. On April 28, 2026, the Court denied Defendants' motion to dismiss and, on April 30, 2026, heard oral argument on Plaintiffs' PI motion. *See* ECF Nos. 54 and 56. The Court also set a deadline to produce the CAR by May 13, 2026, in accordance with its prior order and set a deadline for Plaintiffs to file a motion for supplemental discovery and briefing schedule for such a motion. *See* ECF No. 57. Defendants produced the CAR on May 13, 2026, *see* ECF No. 59, and filed an answer on July 8, 2026. *See* ECF No. 69.

On September 29, 2026, the Court granted Plaintiff's PI motion. *See* Order, ECF No. 72. In the Order, the Court found the BOP Director's termination letter and public message were contradictory and, "[a]lthough an agency may have multiple reasons for its action, it cannot offer an entirely pretextual explanation that is undermined by its own contradictory assertions made the same day." *Id.*, p. 26. As such, the Court concluded that "Plaintiffs are likely to succeed on their claim that Defendants' decision to terminate the CBA was arbitrary and capricious in violation of the APA." *Id.*, p. 27. The Court also found Plaintiffs demonstrated that they will suffer irreparable harm that could not otherwise be remedied in the absence of a preliminary injunction and that the balance of the equities and the public interest also weigh in favor of granting a preliminary injunction. *Id.*, pp. 27-30. In granting the preliminary injunction, the Court concluded with an order that "Defendants shall immediately reinstate the CBA, as well as any amendments, local

supplemental agreements, and memoranda of understanding that were in place subsidiary to the CBA, for the remainder of the agreed-upon term provided in the CBA." *Id.*, p. 32. Earlier in its Order, the Court also stated that "Defendants shall immediately reinstate the CBA for the remainder of the agreed-upon term provided in the CBA, *and shall be governed by the terms of that agreement*." *Id.*, p. 2 (emphasis added).

## II. DEFENDANTS' UNDERSTANDING OF THE INJUNCTION

### A. Defendants do not understand the Court's Order to preclude the BOP from re-terminating the CBA in a fresh decision before the end of the CBA's Term.

In its Order, the Court recognized that Plaintiffs were asking the Court to adjudicate only "BOP's decision to terminate the CBA." *See* Order, p. 2, ECF No. 72. Specifically, the Court appreciated that "[t]his case does not concern the validity of EO 14,251—that litigation is ongoing elsewhere throughout the nation." *Id.* Appropriately focused on the challenged action before it, the Court did not conclude that the BOP could not articulate a lawful basis upon which to terminate the CBA during the remainder of its term (*i.e.*, until May 28, 2029), and contemplated as much during the preliminary injunction hearing. *See* PI Mot. Hearing Tr., pp. 32, 67-68. An injunction prohibiting a future termination based on a different record and new agency explanation would be improper for three reasons.

*First*, the "principle of party presentation" required the Court to focus on the September 25, 2025, termination, not hypothetical future terminations. *See Clark v. Sweeney*, 607 U.S. 7, 9 (2025). The only agency action the Plaintiffs challenge in this suit is Defendants' September 25, 2025, termination of the CBA. *See* PI Motion, ECF No. 28-7 (Proposed Order that "the Court GRANTS Plaintiffs' Motion and STAYS and PRELIMINARY SETS ASIDE the September 25, 2025 termination of the CBA and PRELIMINARILY ENJOINS Defendants from effectuating the

September 25, 2025 CBA termination.") (emphasis in original). Granting Plaintiffs relief from any speculative future agency actions would go beyond the relief Plaintiffs sought in their complaint and preliminary-injunction motion, and run counter to the rule that Plaintiffs "frame the issues" and "courts call balls and strikes; they don't get a turn at bat." *Clark*, 607 U.S. at 9 (citations omitted).

*Second*, Article III independently bars advisory relief concerning speculative future conduct. The Constitution limits federal courts' jurisdiction to "cases" and "controversies." U.S. Const., art. III, § 2. As the Supreme Court has repeatedly emphasized, that limitation requires "a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." *Carney v. Adams*, 592 U.S. 53, 58 (2020); *accord Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 397 (2024) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."). In the instant case, the question and controversy before the Court is this: did Defendants' termination of the CBA on September 25, 2025, violate the APA. *See* Order, p. 2, ECF No. 72. Based on the record before the Court, the Court ruled that the answer is likely "yes." *Id.* at 2, 26-27. Termination of the CBA on a different basis would require adjudication based on a different record—one not before the Court. In sum, enjoining the BOP from taking any action regarding the current CBA—such as re-terminating the CBA based on an agency rationale other than that the Court considered in its preliminary-injunction order—would constitute precisely the type of advisory ruling Article III forbids.

*Third*, it is axiomatic that equitable relief must be narrowly tailored to remedy the harm alleged. *See Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025) ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.") (quoting

*Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (emphasis omitted); *see also Soc'y for Good Will to Retarded Child., Inc. v. Cuomo,* 737 F.2d 1239, 1251 (2d Cir. 1984) ("Injunctive relief should be narrowly tailored to fit the specific legal violations adjudged."). As discussed *supra*, the only action the Plaintiffs' complaint challenges and that Plaintiffs requested a preliminary-injunction setting aside is Defendants' September 25, 2025, termination of the CBA, and therefore the relief must be tailored to that particular agency action. Indeed, the APA remedy of vacatur contemplates that the BOP "can 'deal with the problem afresh' by taking *new* agency action. An agency taking this route is not limited to its prior reasons but must comply with the procedural requirements for new agency action.'" *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 21 (2020) (citation omitted).

Given this, the Defendants do not read the Court's Order to preclude Defendants from engaging in any future termination of the CBA through its scheduled expiration on May 28, 2029.

**B. Defendants do not interpret this Court's Order to mean the district court intends to supervise every alleged failure to perform a CBA term.**

In the FSLMRS, Congress afforded certain federal employees collective bargaining rights, providing that federal-labor disputes must be resolved by the Federal Labor Relations Authority (FLRA) with judicial review in the courts of appeals. 5 U.S.C. §§ 7102(2), 7104–7106, 7114, 7121–7131. Plaintiffs and BOP entered into a revised CBA on November 1, 2024, when the FSLMRS applied to BOP employees. *See* Order, p. 5, ECF No. 72.

While Congress left BOP within the FSLMRS's coverage by default, it also authorized the President to "exclud[e] any agency or subdivision thereof from [FSLMRS] coverage" upon making certain national-security determinations. 5 U.S.C. § 7103(b)(1). On March 27, 2025, President Trump exercised that authority, issuing Executive Order 14,251, 90 Fed. Reg. 14553 (Apr. 3, 2025), determining *inter alia* that the FSLMRS "cannot be applied to th[o]se agencies and agency subdivisions in a manner consistent with national security requirements and

considerations." *Id.* at 14553–55. The EO applies to the DOJ, which includes the BOP. *See id.* at 14553–54. The EO is not challenged here.

In September 2025, given the EO—and after the Ninth Circuit stayed an injunction AFGE had secured barring the EO's implementation—BOP terminated the Agreement for all employees covered by the EO. *See* Order, pp. 7-13, ECF No. 72.; *AFGE v. Trump, 148 F.4th 648*, 654 (9th Cir. 2025) (per curiam); *see also AFGE v. Trump*, 167 F.4th 1247, 1256 (9th Cir. 2026). Plaintiffs then filed this suit, not challenging the EO or its removal of BOP from the FSLMRS, but instead alleging only that BOP's termination of the Agreement was unlawful and seeking an injunction rescinding BOP's termination. *See* Order, pp. 15-16, ECF No. 72.

Defendants are aware of the Court's Order and aver they are complying with its terms. *See* Exhibit 1, Wilber Memorandum. Defendants also understand that any disputes over a violation of the CBA will be handled in accordance with the CBA's provisions. In stating "Defendants . . . shall be governed by the terms of that agreement" Defendants do not read the Order to extend to supervising Defendants' performance of its collective-bargaining duties under that CBA. In the VA case, the District Court for the District of Rhode Island issued an enforcement order following the entering of a preliminary injunction that mandated "compliance with" AFGE and the VA CBA's terms "in both form and substance." *See AFGE,* 177 F.4th at 9.

On the government's appeal and motion in the VA case, the First Circuit partially stayed the enforcement order. *See generally id.* The First Circuit explained it had jurisdiction because by "requiring 'compliance with the … CBA' … the enforcement order likely 'substantially readjusts the legal relations of the parties'" and "likely modified the preliminary injunction." *Id.* at 17 (first alteration in original). The Court further held that the government made a "strong showing" that the district court lacked jurisdiction to issue this portion of the enforcement order. *Id.* (noting the

District Court did not address the government's contention that "the CBA is not so enforceable by a district court," agreeing with the government that "insofar as the FSLMRS … does not oust the District Court from directly enforcing the CBA … the Tucker Act and Little Tucker Act do" because "the federal government has waived its sovereign immunity only as to the payment of money damages in breach of contract cases").

In reaching that conclusion, the First Circuit relied on its decision in *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 3 (1st Cir. 1989). *Coggeshall* relies in part on a Second Circuit decision to conclude that "[f]ederal courts do not have the power to order specific performance by the United States of its alleged contractual obligations." *Id.* at 3 (citing *Doe v. Civiletti,* 635 F.2d 88, 89 (2d Cir. 1980)). The First Circuit then noted that it was "unaware of any waiver of sovereign immunity by the United States as to specific performance for breach of contract." *Id.*

Unsurprisingly given the First Circuit's citation to Second Circuit precedent—which binds this Court—the Second Circuit prohibits federal courts from ordering specific performance of government contractual provisions and policing non-compliance. *See, e.g.*, *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 377 (2d Cir. 1999) ("The Tucker Act impliedly forbids relief other than remedies provided by the Court of Federal Claims for actions that arise out of a contract with the United States." (cleaned up)); *Presidential Gardens Assocs. v. United States ex rel. Sec'y of Housing & Urban Dev.*, 175 F.3d 132, 143 (2d Cir. 1999) ("Actions seeking specific performance of a contract, brought in order to avoid the Tucker Act's limitation on money judgments, are not allowed to be brought against the United States.").

Outside the FSLMRS's limited review and remedies, no sovereign immunity waiver permits courts to order the government to perform specific obligations under a CBA. Indeed, the United States has not waived sovereign immunity to permit any court to order specific performance

in any federal-contract dispute. *See, e.g., Presidential Gardens Assocs.,* 175 F.3d at 143 ("Even though the APA creates a general waiver of sovereign immunity as to equitable claims, nothing in the APA 'confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.' 5 U.S.C. § 702. Where a claim arises out of a contract with the United States, the Tucker Act 'impliedly forbids' relief other than the remedy provided by the Court of Federal Claims."). The APA's waiver is "inapplicable if 'any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought,' 5 U.S.C. § 702, and the Tucker Act and Little Tucker Act impliedly forbid such relief" in contract cases. *Sharp v. Weinberger*, 798 F.2d 1521, 1523 (D.C. Cir. 1986). Consequently, district courts "likely lack[] jurisdiction to" require compliance with the collective-bargaining agreement's provisions. *AFGE*, 177 F.4th at 17.

At bottom, Second Circuit precedent holds that when a claim arises out of a contract with the United States—and a CBA is a contract between a Union and a United States entity—the Tucker Act impliedly forbids equitable relief irrespective of the APA's general waiver of sovereign immunity as to equitable claims. *See, e.g., Presidential Gardens Assocs.,* 175 at 143. Defendants assume the Court did not mean to contravene the above-mentioned Second Circuit precedent when it ordered that Defendants "shall be governed by the terms of that agreement." Order, p. 2, ECF No. 72. That is especially so given that Plaintiffs themselves did not ask for this remedy, seeking only relief against the September 2025 agency decision. *See* PI Motion, ECF No. 28-7 (Proposing Order staying and preliminarily setting aside *the September 25, 2025, termination* and enjoining Defendants from effectuating *the September 25, 2025, CBA termination*.).

Defendants therefore assume this Court's Order does not mean the district court intends to supervise every alleged failure to perform a CBA term.

## III. CONCLUSION

Defendants aver they are complying with this Court's preliminary-injunction Order, and submit this Notice of Compliance to explain their understanding of what such compliance entails. Defendants do not understand this Court's injunction to preclude the agency from making a fresh decision to terminate the CBA before the end of the agreed-upon term, nor do they read the injunction as indicating that the district court intends to supervise every alleged failure to perform a CBA term in lieu of the CBA's own grievance and arbitration mechanisms.

Respectfully submitted,

THE FEDERAL BUEARU OF PRISONS; and WILLIAM K. MARSHALL III, in his official capacity as Director of the BOP, hereby respectfully

By their attorneys

DAVID X. SULLIVAN
United States Attorney

/s/
J. Brian Meskill (ct29611)
Assistant United States Attorney
450 Main Street, Rm. 328
Hartford, CT 06103
Tel.: 860-947-1101
Fax: (860) 760-7979
Email: Brian.Meskill@usdoj.gov

BRETT A. SHUMATE
Assistant Attorney General

Jeremy Mauritzen (CA Bar 354615)
Trial Attorney
U.S. Department of Justice

Civil Division, Federal Programs
Branch 1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 598-7315
Email: jeremy.mauritzen@usdoj.gov