**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| NATIONAL COUNCIL OF PRISON LOCALS, AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al.*<br><br>*Plaintiffs*,<br><br>v.<br><br>FEDERAL BUREAU OF PRISONS, *et al.*,<br><br>*Defendants*. | Case No. 3:25-cv-01907 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONTEMPT OR IN THE ALTERNATIVE TO ENFORCE THE COURT'S ORDER**

This Court ordered Defendants to "immediately reinstate" the collective bargaining agreement (CBA) between BOP and CPL-33, along with subsidiary agreements. ECF No. 72 at 2, 32. Defendants acknowledge that obligation, ECF No. 74 at 1, and in the week since the Court's injunction they have not sought a stay or to modify the injunction. Instead, they filed a highly unusual "Notice of Compliance" that does not actually outline any steps that BOP has taken or will take to comply with the Court's order. ECF No. 74. The notice outlines certain matters that Defendants "do not understand the injunction" to require or permit the Court to enforce. *Id.*

BOP did not describe any steps toward compliance because, we now know, it is openly defying this Court's order. Here are some examples of BOP's open contempt for the Court's order, which are documented in sworn declarations attached to this motion:

- One Warden at a BOP facility told a local union leader that BOP leadership instructed him not to work with the union and instead to maintain the status quo.

- Another local president reported to CPL-33's leadership that his Warden said wardens were being verbally instructed not to comply with the Court's order and to ignore it.

- Just yesterday, October 5, management at another BOP facility advised the local union that word had been "put out" that management were "not [to] do anything yet" in operating under the CBA.

- At a meeting to terminate one BOP employee, the employee asked to have a union representative present, to which a BOP official responded: "There ain't no union."

- Multiple witnesses testify that BOP Director William K. Marshall III told BOP employees just prior to the entry of the injunction that he would only follow a court order requiring him to reinstate the CBA if the White House told him to do so.

Consistent with this clear record of intentional noncompliance, as of this filing, Defendants have not taken any actions known to Plaintiffs to comply with the injunction. They have not restored union office space or official time, allowed for union representation in disciplinary proceedings, or taken any of the other myriad specific steps that Defendants themselves told the Court would be required if the Court entered the requested injunction. Defendants' noncompliance is total.

If all of that were not enough, Defendants have made clear that their strategy is to tell this Court that there is nothing it can do about Defendants' defiance of the order. In a response to questions from Plaintiffs earlier today about what measures they have taken to comply, Defendants' counsel listed none, and instead said: "To the extent your clients believe the BOP is not adhering to any term provided for within the CBA, . . . their recourse for any alleged breach is to follow the procedures provided in the Agreement." Ex. 6 at 1.

Plaintiffs understand that civil contempt is a high bar, but if ever there were a case where it is warranted, it is here. In the alternative, Plaintiffs request that the Court enforce its order, although Plaintiffs respectfully submit that civil contempt would be the more appropriate recourse given Defendants' open defiance and the jurisdictional issues that arose in *American*

*Federation of Government Employees Local 2305 v. U.S. Department of Veterans Affairs*, No. 1:25-cv-00583 (D.R.I.) where the district court issued an order to enforce its injunction. *See* 177 F.4th 1, 17 (1st Cir. 2026).

## I. The Injunction

On March 27, 2025, President Donald Trump issued Executive Order 14,251, excluding the Department of Justice and its member agencies, including the Federal Bureau of Prisons ("BOP") from provisions of the Federal Labor-Management Relations Programs. 90 FR 14553 (Mar. 27, 2025). Six months later, on September 25, 2025, BOP Director William K. Marshall III terminated the BOP's collective bargaining agreement ("CBA") with National Council of Prison Locals, American Federation of Government Employees ("CPL-33"). Although the termination letter points to Executive Order 14,251, ECF No. 28-5 at 2, Director Marshall simultaneously posted a public Message on the BOP website stating that the "whole purpose of ending this contract" was because the "union [was] an obstacle to progress" and "the current contract has too often slowed or prevented changes." ECF No. 28-6 at 2–3.

CPL-33 and AFGE Local 1661 filed suit, alleging that the termination violated both the Administrative Procedure Act and the First Amendment. ECF No. 1. On December 22, 2025, Plaintiffs filed a motion for preliminary relief under 5 U.S.C. § 705 and for a preliminary injunction. ECF No. 28. In opposing preliminary relief, Defendants made clear that they knew exactly what steps they would need to take to reinstate the CBA. They argued that they would have to reconfigure their dues collection system; return union representatives to union official time allocations; reengage in collective bargaining with CPL-33; re-issue union office space and technology; and revert to prior practices with respect to the Union. ECF No. 40-1 at 38.

On September 29, 2026, this Court granted that motion and ordered Defendants BOP and Director Marshall to "immediately reinstate the CBA as well as any amendments, local supplemental agreements, and memoranda of understanding that were in place subsidiary to the CBA, for the remainder of the agreed-upon term provided in the CBA." ECF No. 72 at 32 ("Order").

In the days following the Court's injunction, Plaintiffs received no communications from BOP regarding reinstatement of the CBA. On October 1, 2026, Plaintiffs' counsel contacted counsel for Defendants communicating this fact and asking regarding what steps Defendants are taking to comply with the Order. On October 2, Defendants provided a Memorandum to CPL-33 from BOP's Assistant Director Human Resource Management Division. ECF No. 74-1. The Memorandum merely quotes the Court's order and states that BOP is "aware of the Court's Order and is complying with its terms." *Id.*

Shortly thereafter, Defendants filed what they termed a "Notice of Compliance" with the Court. ECF No. 74. In that notice, Defendants "aver they are complying with this Court's preliminary-injunction Order," *id.* at 10, but they do not include any information relating to how they have complied or when they will comply with the order. Instead, the sole purpose of the notice is to inform the Court as to what Defendants "do not understand," or "do not read," the injunction to entail. *Id.* at 1-2, 5, 7-8, 11.

Plaintiffs' counsel asked Defendants' counsel on October 5, 2026 to identify the specific steps that BOP has taken to comply. Defendants identified no such steps. *See* Exhibit 6. Instead, they made clear their strategy is to do nothing and tell this Court there is nothing it can do. Defendants' counsel wrote:

> BOP confirms the CBA has been reinstated, along with amendments, local supplemental agreements, and other memorandums of understanding, per the

> Court's Preliminary Injunction. To the extent your clients believe the BOP is not adhering to any term provided for within the CBA, the reinstated CBA provides the remedy for alleged breaches of its terms. Thus, their recourse for any alleged breach is to follow the procedures provided in the Agreement—the same procedures that they followed before the termination of the CBA.

Ex. 6 at 1.

## II. Noncompliance

BOP has not reinstated the CBA, despite the Court's preliminary injunction requiring that they do so "immediately." Plaintiffs' declarations describe continuing nonrecognition of the union and continued failure to give effect to the CBA that the Court ordered reinstated.

CPL-33 President Brandy White has gathered reports from regional and local union leaders concerning BOP's failure to implement the Court's order at institutions across the country. Decl. of Brandy White ("White Decl.") ¶¶ 2, 4. BOP has provided White with no implementation plan or timeline. Instead, local leaders have been told that wardens lack guidance, that the order remains under review or is subject to agency discretion, or that management has been instructed to take no action. *Id.* ¶ 6. In the meantime, union offices have not been returned, access to staffing rosters has not been restored, local MOUs have not been reinstated, regular labor-management meetings have not resumed, and requests for official time are being denied or left unanswered. *Id.* ¶¶ 5–6.

Reports from individual institutions describe affirmative instructions to preserve the status quo, rather than implement the Court's order. On October 1, Jonathan Eperson, President of AFGE Local 612 at USP Big Sandy, reported that the Acting Warden had told him that the Regional Director instructed management not to work with the union on anything and to maintain the status quo. *Id.* ¶ 8. On October 5, the Warden refused to acknowledge Eperson as a union representative at an employee discipline meeting. *Id.* ¶ 9. At FCI Manchester, management similarly advised the local union on October 5 that word had been "put out" that management

were "not [to] do anything yet." *Id.* ¶ 10. Another local president reported to White that his Warden said wardens were being verbally instructed not to comply with the Court's order and to ignore it. *Id.* ¶ 7.

Other institutions have continued withholding recognition and access while invoking the absence of agency guidance. At USP McCreary, Warden Tim Taylor told the local president on October 5 that he had received "zero guidance" and could not restore the union's former office. *Id.* ¶ 11. At FCI Morgantown, Acting Warden John Squires stated that the matters raised by the union were "currently under review" and that "the order is at agency discretion"; the local president was also told he could not attend the next department head meeting. *Id.* ¶ 12. Official time requests have been denied at FMC Lexington and USP Lee, with management stating that it was awaiting further guidance. *Id.* ¶¶ 14–15. At FCI Ashland, management did not act on requests for official time and for restored roster access. *Id.* ¶ 16.

In the week since the Order, locals have repeatedly sought implementation through standard requests under the CBA. Between October 2 and October 5, eleven locals served written notices or formal demands for compliance on their wardens, including requests for official time and union recognition. As of October 5, ten had received no substantive response. *Id.* ¶ 17. At FMC Carswell, the Warden issued written denials on both October 4 and October 5 of requests for union representation and partnership discussions. *Id.* ¶ 18.

The effects also extend to employees' work schedules. Following termination of the CBA, BOP eliminated compressed work schedules that had been negotiated locally and around which employees had organized their lives. White is unaware of any institution that has restored those schedules. *Id.* ¶ 18. White reports that their continued loss has contributed to experienced employees leaving BOP, making institutions less safe for staff and inmates. *Id.*

BOP's noncompliance is having real effects on BOP employees. For example, on October 5, 2026, six days after the Court's order, TaRhonda Rolfe was directed to attend a disciplinary meeting with the FCC Forrest City Warden. Decl. of TaRhonda Rolfe ("Rolfe Decl.") ¶¶ 2–3. Before the meeting, Rolfe requested union representation from the facility's Human Resources Manager. *Id.* ¶ 4. The HR Manager responded, "There ain't no union," and told Rolfe that she could not have union representation. *Id.* When Rolfe renewed her request during the meeting, the HR Manager repeated, "There ain't no union." *Id.* ¶ 5. Warden Heckard heard both the request and the HR Manager's response, yet proceeded without allowing a union representative to attend. *Id.* ¶¶ 6–7. At the meeting's conclusion, Rolfe was informed that she was being terminated from the Case Manager position she had held for approximately nineteen years. *Id.* ¶¶ 2, 8.

BOP's refusal to implement this Court's order is consistent with Director Marshall's stated position concerning compliance with a reinstatement order. At a September 29 staff meeting at FCI Elkton, just before this Court issued its injunction, a BOP employee asked Marshall whether he would honor a federal court ruling requiring BOP to reinstate the union. Decl. of Andrew Cole ("Cole Decl.") ¶¶ 3–4; Decl. of Steven Osborn ("Osborn Decl.") ¶¶ 3–4; Decl. of Matthew Mason ("Mason Decl.") ¶¶ 4–5. Andrew Cole recalls that Marshall responded that he worked for and answered to the White House, and would reinstate the union when his bosses instructed him to do so, but not until then. Cole Decl. ¶ 5. Steven Osborn independently recalls Marshall stating that he would comply with a court order when the White House told him to. Osborn Decl. ¶ 5. So too, Matthew Mason recalls Director Marshall saying that he takes his orders from the President and not from a court. Mason Decl. ¶ 5.

## III. Legal Standard

Civil contempt is warranted where the movant establishes that "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)). Willfulness is not required. *Id.* Civil contempt may be imposed to secure compliance with the Court's existing directive. *Id.* at 657.

"Ensuring compliance with a prior order is an equitable goal which a court is empowered to pursue even absent a finding of contempt." *Berger v. Heckler*, 771 F.2d 1556, 1569 (2d Cir. 1985). "In enforcing its orders, a district court may take such steps as are appropriate given the resistance of the noncompliant party." *Id.*

## IV. Contempt is Warranted

Plaintiffs have carried their burden to show each of the three elements necessary for civil contempt.

### *A. The preliminary injunction's reinstatement requirement is clear*

"A clear and unambiguous order is one that leaves 'no uncertainty in the minds of those to whom it is addressed.'" *King v. Allied Vision, Ltd.*, 65 F.3d at 1058 (quoting *Hess v. New Jersey Transit Rail Operations, Inc.*, 846 F.2d 114, 116 (2d Cir. 1988)). The Order here could not be clearer: "immediately reinstate the CBA, as well as any amendments, local supplemental agreements, and memoranda of understanding that were in place subsidiary to the CBA, for the remainder of the agreed-upon term provided in the CBA." ECF No. 72 at 32 ("Order"). A CBA is either reinstated or it is not. And Defendants know what the CBA requires when reinstated—

they operated under the CBA for decades, including for nearly six months after Executive Order 14,251 until Defendants terminated the CBA in September 2025.

Before entry of the Order, Defendants also identified the practical steps reinstatement would entail, including official time, collective bargaining, and restoration of union office space and technology. ECF No. 40-1 at 38. Defendants cannot plausibly characterize as uncertain an obligation that they previously operated under for years and whose implementation they previously described.

*B. There is clear and convincing proof of Defendants' noncompliance*

The declarations provide clear and convincing evidence that Defendants have not complied with the Court's express directive to reinstate the CBA immediately. The Second Circuit requires proof sufficient to establish a "reasonable certainty that a violation occurred." *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002) (cleaned up). Plaintiffs' evidence meets that standard: it identifies the BOP officials involved, the dates of the refusals, the rights still withheld, and management's statements corroborating that their failure to comply is knowing and intentional.

The Court ordered Defendants to "immediately reinstate the CBA" and directed that they "shall be governed by the terms of that agreement." ECF No. 72 at 2. Yet on October 5, six days after entry of the injunction, management at FCC Forrest City expressly denied the existence of the union. TaRhonda Rolfe personally recounts that, before a meeting concerning disciplinary action against her, she requested union representation from the Human Resources Manager. The HR Manager responded, "There ain't no union," and told Rolfe she could not have representation. Rolfe Decl. ¶¶ 3–4. When Rolfe renewed her request during the meeting, the HR Manager repeated that statement in Warden Katina Heckard's presence. *Id.* ¶¶ 5–6. The Warden proceeded without a union representative and informed Rolfe at the conclusion of the meeting

that she was being terminated. *Id.* ¶¶ 7–9. Management's stated ground for refusing representation—that there was no union—directly demonstrates its continued treatment of the CBA as not in force.[1]

Rolfe's experience was not an isolated incident. Brandy White places that firsthand account into a broader pattern of continued nonrecognition. As CPL-33's President, White gathered reports from regional and local union leaders concerning implementation of the injunction. White Decl. ¶¶ 2, 4. She reports that, on October 1, the president of Local 612 at USP Big Sandy was told by the Acting Warden that the Regional Director had instructed him not to work with the union on anything and to maintain the status quo. *Id.* ¶ 8. On October 5, management at FCI Manchester advised the local union that instructions had been issued not to do anything yet. *Id.* ¶ 10. That same day, FCI Morgantown's Acting Warden characterized the matters raised by the union as "under review" and asserted that "the order is at agency discretion." *Id.* ¶ 12. These reported responses consistently describe continued suspension of the bargaining relationship pending further agency direction.

Defendants' noncompliance is further evidenced by operations at BOP facilities nationwide. Union offices, roster access, local MOUs, and regular labor-management meetings had not been restored, while official-time requests were being denied or left unanswered. *Id.* ¶¶ 5–6. At USP McCreary, the union's former office remained an employees' club store, and the Warden told the local president he could not restore it. *Id.* ¶ 11. At FMC Lexington and USP Lee, management denied official-time requests while invoking the absence of further guidance. *Id.* ¶¶ 14–15. At FMC Carswell, the Warden issued written denials of requests for union

---

[1] Plaintiffs, through this motion, are not asking the Court to enforce any particular CBA provision, as to Rolfe or anyone else. Plaintiffs bring these examples to the Court's attention to demonstrate Defendants' willful non-compliance with the Court's order to reinstate the CBA.

representation and partnership discussions on October 4 and 5. *Id.* ¶ 18. These accounts support the conclusion that BOP has continued operating with the CBA terminated, which is contrary to the Court's order that BOP immediately reinstate the CBA. The withholding of these arrangements is significant because Defendants themselves identified official time, bargaining, and union office space as consequences of an injunction requiring reinstatement of the CBA. ECF No. 40-1 at 38. The continued absence of these benefits, coupled with management's categorical denials of recognition, proves that the September 2025 termination remains operative in practice.

BOP's post-order conduct accords with the approach Director Marshall described at a staff meeting at FCI Elkton on September 29, just prior to this Court's issuance of the injunction. Two employees who attended that meeting recount that Marshall was asked whether he would honor a judicial ruling requiring reinstatement of the union. Cole Decl. ¶¶ 3–4; Osborn Decl. ¶¶ 3–4. Both recall that Director Marshall conditioned reinstatement on direction from the White House. Cole Decl. ¶ 5; Osborn Decl. ¶ 5. The Director's statements corroborate that BOP is treating this Court's preliminary injunction as insufficient to require Defendants to reinstate the CBA.

*C. Defendants have not acted diligently to comply*

Finally, Plaintiffs have shown that BOP "has not been reasonably diligent and energetic in attempting to accomplish what was ordered." *EEOC v. Local 638*, 753 F.2d 1172, 1178 (2d Cir. 1985) (cleaned up). It would be enough that, in the week since this Court's order, Defendants have taken no concrete steps to implement the order. But Defendants have not only failed to implement the order; they affirmatively frustrated compliance by directing local facilities not to comply. Defendants have done so through the reported instructions to maintain the status quo and take no action affirmatively to work with the union. White Decl. ¶¶ 7–9. Other

wardens have told union officials that they have received no guidance or that the Court's Order "is at agency discretion." *Id.* ¶¶ 11–12, 14–15.

The Notice that Defendants filed on October 2 and the Wilber Memorandum provide no evidence of diligence and only confirm that Defendants are seeking to evade the Court's order. ECF Nos. 74, 74-1. Neither identifies any concrete steps BOP has taken to reinstate the CBA. The memorandum recites the Order and makes a bare statement of compliance with no supporting or concrete details, and it gives no implementing instructions. ECF No. 74-1 at 1. The "Notice of Compliance" devotes its discussion solely to Defendants' "understanding" of the *limits* on the injunction. ECF No. 74 at 1–2, 5–11. It conspicuously does not contain a word on how Defendants are complying. That can be no accident.

In response to Plaintiffs' request to Defendants' counsel on October 5, 2026, Defendants continued to fail to identify any specific steps that BOP has taken to comply. *See* Exhibit 6.

Finally, the Order's requirement of "immediate" reinstatement forecloses BOP's ability to indefinitely defer action pending further agency deliberation. In *King*, the Second Circuit rejected the argument that an obligation to take immediate steps lacked an enforceable deadline. 65 F.3d at 1058. Whatever logistical work particular aspects of reinstatement may require, Defendants were compelled to begin implementing the Order immediately, including by recognizing the restored CBA as binding. They have done the opposite, and each additional day that goes by without compliance further injures Plaintiffs. *See* White Decl. ¶¶ 19–20; Rolfe Decl. ¶¶ 4–9.

## V. Requested Relief

The Court should find that Defendants are in civil contempt and order Defendants to purge that contempt through immediate compliance. It is apparent that Defendants' strategy is to lay what it thinks is a jurisdictional trap, arguing that the Court lacks authority to compel

compliance with its order because doing so would purportedly be enforcing the terms of the CBA, which provides for alternative dispute resolution processes. But the Court has inherent authority, including the contempt power, to obtain compliance with its orders, and may hold Defendants in contempt for their complete and open defiance of the Court's injunction. *Paramedics Electromedicina Comercial*, 369 F.3d at 655, 657.

The Court should order Defendants to file a sworn compliance certification, within 48 hours, from Director Marshall or a responsible senior BOP official, identifying the steps BOP has taken to purge its contempt, including attaching the instructions BOP has issued to employees. Should Defendants fail to purge contempt, the Court should consider further measures including coercive sanctions. *See Vuitton et Fils S. A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979). In the alternative to contempt, the Court should enforce its order.

Dated: October 6, 2026

Respectfully submitted,

*/s/ Daniel F. Jacobson*
Daniel F. Jacobson (D.C. Bar 1016621)*
Lynn D. Eisenberg (D.C. Bar 1017511)*
Brian C. Rosen-Shaud (D.C. Bar 90042065)*
Jacobson Lawyers Group PLLC
5100 Wisconsin Ave NW, Suite 301
Washington, D.C. 20016
(301) 823-1148
dan@jacobsonlawyersgroup.com

*Admitted *pro hac vice*

By: *<u>/s/ Logan J. Place</u>*
Logan J. Place (ct31874)
Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.
557 Prospect Avenue, 2nd Floor
Hartford, CT 06105
(860) 233-9821
ljplace@lapmk.org

*Counsel for Plaintiffs*