**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| NATIONAL COUNCIL OF PRISON LOCALS, AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, et al., *Plaintiffs*; v. FEDERAL BUREAU OF PRISONS, et al., *Defendants*. | ) | No. 3:25-CV-01907-VDO |

## **SUPPLEMENTAL DECLARATION OF JONATHAN HEMINGWAY**

I, Jonathan Hemingway, declare, pursuant to 28 U.S.C. § 1746, as follows:

1. I am the Senior Deputy Assistant Director for the Bureau of Prisons ("BOP" or "Bureau") Human Resource Management Division ("HRMD"). The BOP is a component of the United States Department of Justice ("DOJ"). I have served in this role since May 2023. I also served as the Acting Assistant Director from November 2025 until May 2026. I have been employed by the BOP continuously since January 2008. In my current role I am responsible for overseeing the development, implementation, and administration of Human Resource policy and programs. I oversee various Human Resource-related areas and develop initiatives pertaining to, and including, career development, recruiting, employee performance and evaluations, employee upward mobility, employee pay issues, position classification, staffing, employee benefits programs, research, executive development, and employee leave issues.

2. I previously submitted a declaration related to this case on February 12, 2026. This declaration supplements my February 12, 2026, declaration. Further, the provisions of that previous declaration and its attachments are incorporated by reference into this declaration to avoid repetition.
3. I am familiar with the above-captioned matter. Based on personal knowledge and information provided to me in the course of my official duties, I provide this declaration in support of Defendants' Opposition to Plaintiffs' Motion for Contempt or in the Alternative to Enforce (3:25-CV-01907, Dkt. No. 75).
4. Bureau of Prisons staff entitled to wage and overtime pay under the Fair Labor Standards Act("FLSA") had been represented by the Council of Prison Locals-33 ("CPL-33"), which had been certified as the exclusive representative of all such employees of the BOP. The BOP and CPL-33 engaged in bargaining and negotiated a Collective Bargaining Agreement ( "Master Agreement" or "CBA").
5. For organizational purposes, CPL-33 is a sub-member organization of the American Federation of Government Employees ("AFGE"). AFGE also established local chapters representing staff at each BOP institution or location. Those local chapters, however, were not independently certified or recognized by AFGE or BOP. In essence, local union chapters served as agents of CPL-33. Under the auspices of CPL-33. each local union president engaged in negotiations with management at that location and reported up to the CPL-33's national e-board members. This often led to disparate implementation of the Master Agreement across the Bureau, which further complicated re-implementation pursuant to the September 29, 2026, Order.
6. The most recent version of the Master Agreement was signed by the then Director of the Bureau of Prisons and the CPL-33 President on July 21, 2014, and was extended (with amendments) up to and through May 28, 2029.
7. On September 25, 2025, the Director of the Bureau of Prisons, William K. Marshall III, terminated the Master Agreement with CPL-33. This termination was documented in a memorandum from Director Marshall to CPL-33 President Brandy Moore White on September 25, 2025. As a result of the termination, CPL-33 was no longer recognized as the exclusive representative of staff in the Bureau of Prisons; and all negotiated agreements between the BOP and CPL-33 (or its local subordinate unions) were terminated and no

longer in effect.

8. I am aware that on Tuesday September 29, 2026, a Preliminary Injunction was issued in this matter related to the Director's decision to terminate the Master Agreement. Specifically, the injunction ordered the Bureau to, "immediately reinstate the CBA, as well as any amendments, local supplemental agreements, and memoranda of understanding that were in place subsidiary to the CBA, for the remainder of the agreed-upon term provided in the CBA."
9. The next morning, Wednesday September 30, 2026, BOP senior managers met with their legal representatives to discuss the meaning of the Preliminary Injunction, its ramifications, and what was required to ensure compliance.
10. On Thursday October 1, 2026, BOP senior leadership met again to discuss compliance with the Preliminary Injunction. Based on that meeting, on Friday October 2, 2026, Assistant Director (HRMD) Malia Wilber sent a memo to Brandy Moore White, the President of CPL-33, in which she noted the Bureau was aware of the Court's Order and is complying with its terms. Specifically, the BOP reinstated the CBA following the September 29, 2026, Preliminary Injunction.
11. Following issuance of that memorandum, on Monday October 5, 2026, leadership from HRMD met with the Bureau's six Regional Directors and reiterated that the Master Agreement was reinstated and they should instruct Wardens within their regions to ensure compliance and implementation of its terms. For example, the Regional Directors were instructed at that meeting to have their Wardens facilitate the use of official time by Union officials, representation of employees by Union officials at official meetings, scheduling meetings with local Union officials, and similar matters related to compliance.
12. On October 7, 2026, the Director issued a recission of the September 25, 2025, termination of the Master Agreement, along with a new termination of the Master Agreement. Both documents were sent to Union President Brandy Moore White on October 6, 2027. **Attached as Exhibit A is a true and correct copy of the rescission memorandum issued October 7, 2026. Attached as Exhibit B is a true and correct copy of the termination memorandum issued October 7, 2026.**
13. Between the issuance of the September 29, 2026, Preliminary Injunction, and the issuance of the October 7, 2026, termination, the Agency took immediate and substantial steps on a

nationwide basis toward compliance with the Preliminary Injunction. However, since the original termination on September 25, 2025, there have been numerous changes to government-wide rules, regulations, and procedures that directly conflict with the terms of the Master Agreement, local agreements, and memoranda of understanding. Prior to the October 7, 2026, termination, the Bureau was in the process of reviewing those changes to determine the extent to which they would conflict with reinstatement of the Master Agreement or any amendments, local supplemental agreements, or memorandums of understanding. . No provisions of the Master Agreement, local agreement, or memorandum of understanding can be implemented in conflict with government-wide laws, rules, or regulations (See Master Agreement, Article 3(a)).

14. Following issuance of the September 29, 2026, Preliminary Injunction, and prior to the October 7, 2026, termination, Wardens at all BOP locations were instructed by their respective Regional Directors to consider all requests for official time on a case-by-case basis pursuant to Article 11 of the Master Agreement, and to authorize reasonable official time requests. In the short time (8 calendar days) since the Preliminary Injunction was issued on September 29, 2026, the Agency had already received *hundreds of* requests for official time pursuant to Article 11. Local management officials immediately began reviewing these requests on a case-by-case basis and reasonable requests for official time were granted in accordance with Article 11 of the Master Agreement. For example:

    a. National Union President Brandy Moore White requested, and was granted, to be placed on 100% official time.
    b. Thomas Moore, who is the National Legislative Coordinator for the Union requested, and was granted, 100% official time.
    c. Multiple Union officials at USP Lee in Virginia requested, and were granted, a total of 40 hours of official time.
    d. Union officials at FCI Tucson in Arizona requested, and were granted, a total of 32 hours of official time.
    e. Union officials at FCI McDowell in West Virginia requested, and were granted, 16 hours of official time.
    f. The local Union President at FCI El Reno in Oklahoma requested, and was granted, eight hours of official time.

g. The local Union President at FCI Three Rivers in Texas requested, and was granted, two hours of official time.

15. Following issuance of the September 29, 2026, Preliminary Injunction, and prior to the October 7, 2026, termination, the Bureau ceased utilizing the streamlined policy development process which it implemented in December 2025. Under that process, over 130 new, updated, or cancelled policies were issued in a nine-month period. No new or updated policies or procedure memoranda have been issued since September 29, 2026. Prior to issuance of the new termination, the Agency expected to engage with the Union, per the Master Agreement, regarding new or updated policies and procedural memoranda as such documents were completed, including regarding recently completed policies and procedural memos such as: Authorization for Use of Expandable Batons; Information Security and Resources Protection; Accounts Payable; Federal Prison Industries Physical Inventories; Federal Prison Industries Product, Plant, and Equipment; Volunteer Services; and Pretrial Inmates.

16. Post-termination of the Master Agreement in September 2025, the BOP reclaimed thousands of square feet of office space, as well as significant amounts of information technology (IT) equipment and other resources, which had been provided to local subordinate unions within the BOP, and their members free of charge. The space and resources formerly used by union representatives and members has already been repurposed by BOP institutions and much of it is now used for mission-related work. Following issuance of the Preliminary Injunction, and prior to the October 7, 2026, termination, however, institutions have been instructed to identify alternate space to be used by the Union on a permanent basis. This process takes time to identify space at each of the approximately 120 BOP institutions, many of which have extremely limited space available, and ensure it is habitable for use by the Union. Nonetheless, prior to the October 7, 2026, termination, at least one institution had already identified space to be utilized by its local union. Until more permanent office space could be identified, and prior to the October 7, 2026, termination, the Regional Directors instructed Wardens to ensure a private space was available for Union officials to meet with their members as needed on an ad hoc basis.

17. Following issuance of the Preliminary Injunction, and prior to the October 7, 2026, termination, Wardens have been instructed to allow Union officials to provide representation to bargaining unit employees during official meetings, interviews pursuant to an

investigation, and during the disciplinary process. For example, at FCI Phoenix in Arizona, the Union provided representation to an employee during their oral response to a disciplinary proposal.

18. Following issuance of the Preliminary Injunction, and prior to the October 7, 2026, termination, the grievance system pursuant to Article 31 of the Master Agreement was available for use by all employees to raise concerns including violations of the contract or failure to comply with the terms of the Preliminary Injunction. Article 31 instructs employees and the Union to file grievances at the institution level. I am not aware of any grievances being filed between September 29, 2026, and October 7, 2026.

19. I am further aware of some grievances in which arbitration was previously invoked pursuant to Article 32 of the Master Agreement that had been held in abeyance following the September 25, 2025, termination. Following the issuance of the Preliminary Injunction on September 29, 2026, some Union representatives and arbitrators have engaged with Agency representatives to re-activate such arbitrations based on the September 29, 2026, Preliminary Injunction. Prior to the October 7, 2026, termination, the Bureau had begun scheduling such cases for hearing or other proceedings as appropriate.

20. Following issuance of the Preliminary Injunction, and prior to the October 7, 2026, termination, the Bureau was in the process of directing its payroll service provider to restart collecting union dues for CPL-33 members. The BOP's ability to restart dues automatically for union members is limited because AFGE has been promoting the use of its internal dues collection system, "e-Dues." The BOP does not have information on which employees may now be paying membership dues directly through the e-Dues system. As a result, restarting automatic payroll deductions for all impacted employees could harm those employees by having double payment of dues; and requires substantial effort by human resource staff to ensure information is inputted correctly and accurately.

21. Following issuance of the Preliminary Injunction, and prior to the October 7, 2026, termination, local union officials at numerous institutions have requested meetings with institution management, to include the resumption of labor-management relations (LMR) meetings. Local management officials had been instructed to begin scheduling such requested meetings, to include LMR. Such meetings were being scheduled as soon as reasonably practicable. At FCI Gilmer in West Virginia, for example, a union representative

was invited to attend a committee meeting, consistent with the Master Agreement and Program Statement 3730.06, *Workplace Violence Prevention, Staff.*

22. It is my understanding that on October 6, 2026, the Union requested to schedule national LMR meetings. That request was received late in the day on October 6, 2026; however, the Master Agreement was terminated on October 7, 2026, before a response could be provided.

23. Each of the Agency's approximately 120 institutions controls access to the roster program locally. I am aware that following issuance of the Preliminary Injunction on September 29, 2026, multiple local Union officials requested roster access from their assigned institutions. All such reasonable requests for access were in the process of being authorized at the time of the October 7, 2026, termination.

24. Scheduling for most employees is done on a quarterly basis. The roster for the current quarter (which began on or around October 1, 2026) was approved weeks ahead of the start of the new quarter, and staff had already been notified of their assigned posts, shifts, and schedules at each location. There was no way to feasibly alter these schedules or engage with the Union to implement new schedules or rosters following issuance of the September 29, 2026, Preliminary Injunction. Wardens at each institution were instructed to include the Union in scheduling discussions pursuant to Article 18 of the Master Agreement beginning with the next quarter (which begins on or around January 1, 2026).[1] The Bureau also discontinued its reliance on 12-hour shifts for certain custody posts and would have reverted back to the schedules in place prior to September 25, 2025, beginning with the next quarter, until appropriate negotiations could have taken place related to the use of 12-hour custody shifts, however the October 7, 2026, termination, foreclosed the need to do so.

25. Following issuance of the Preliminary Injunction, and prior to the October 7, 2026, termination, the Agency took numerous actions to re-implement the terms and provisions of the Master Agreement relating to misconduct investigations and adjudication, including:
    a. The Agency ceased implementation of the "irrefutable evidence" standard for misconduct, and reverted to the procedures in Article 30 of the Master Agreement.
    b. The Agency ceased implementation of the voluntary misconduct diversion program and reverted to the procedures in Article 30 of the Master Agreement.

---

[1] Each institution manages scheduling locally. As such, the exact date of the beginning of the quarter may vary slightly between institutions.

c. The Agency ceased implementation of updated timeframes in which to provide a response to disciplinary and adverse actions, and allowed employees issued new proposed discipline and new proposed adverse actions between September 29, 2026, and October 7, 2026, to respond in accordance with the timeframes established in Article 30(j) of the Master Agreement.

d. As indicated above, following the issuance of the September 29, 2026, Preliminary Injunction, local management officials were instructed to allow Union representation during misconduct investigations and during the disciplinary process, in accordance with applicable regulations issued by the Office of Personnel Management (OPM). Reasonable official time for such purposes was authorized prior to the October 7, 2026, termination.

26. Finally, I am aware that on October 6, 2026, the Plaintiffs filed a Motion for Contempt or in the Alternative to Enforce (3:25-CV-01907, Dkt. No. 75). In that filing, without identifying the institutions, locations, or officials, the Union made several conclusory and unverified statements indicating unnamed management officials at undisclosed locations made comments stating words to the effect of, "BOP leadership instructed [the Warden] not to work with the union," and "wardens were being verbally instructed not to comply with the Court's order and to ignore it," and "not to do anything yet." As indicated above, no such guidance was given by BOP leadership. To the contrary, beginning on the morning of September 30, 2026 – the day after the Preliminary Injunction was issued – the focus of BOP senior leadership was on implementation and compliance with the Preliminary Injunction. Specifically, as detailed above, when BOP senior leadership met on Monday, October 5, 2026, the six Regional Directors were explicitly instructed to notify the Wardens in their respective regions to comply with the Court's Order.

27. Furthermore, I and other leaders from HRMD have been communicating with the Regional Directors regularly since the Preliminary Injunction was issued. At no time have any of the Regional Directors brought any such unapproved or inappropriate communications to my attention. Nonetheless, even if a Warden or management official at an isolated institution made such an inappropriate statement, such a statement was inconsistent with the BOP's position, inconsistent with guidance issued to the Regional Directors, and could have been addressed through grievance procedures pursuant to Article 31 of the Master Agreement.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 8, 2026.

Jonathan Hemingway

Senior Deputy Assistant Director, HRMD