**U.S. Department of Justice**

Federal Bureau of Prisons

*Office of the Director* *Washington, DC 20534*

October 7, 2026

MEMORANDUM FOR BRANDY MOORE WHITE, UNION PRESIDENT

FROM: William K. Marshall III, Director

SUBJECT: Termination of Existing Collective Bargaining Agreement

This memorandum provides official notice to the American Federation of Government Employees (AFGE) and the Council of Prisons Locals-33 (CPL or CPL-33) that, pursuant to Executive Order (EO) 14251, the Federal Bureau of Prisons (Bureau or BOP) is terminating the Collective Bargaining Agreement (CBA or Master Agreement) between the BOP and CPL-33 (effective July 21, 2014-May 28, 2029), as well as any amendments, local supplemental agreements, past practices, and memoranda of understanding at all levels for all employees covered by EO 14251, effective the date of this memorandum.

## I. Background

Pursuant to the Master Agreement, CPL-33, which is a subsidiary of AFGE, is the sole and exclusive representative of covered Bureau employees. That relationship led to the issuance of the Master Agreement between CPL-33 and the BOP. The most recent version of the Master Agreement was issued on July 21, 2014, and extended (with amendments) up to and through May 28, 2029.

On March 27, 2025, President Donald J. Trump signed EO 14251, "*Exclusions from Federal Labor-Management Relations Programs*," which amended EO 12171, "*Exclusions from the Federal Labor-Management Relations Program*," issued November 19, 1979, which sets forth the Federal agencies and subdivisions thereof excluded from coverage under the Federal Service Labor-Management Relations Statute (FSLMRS), 5 U.S.C. Chapter 71.

Section 2 of the Executive Order excludes DOJ, except for particular offices of the United States Marshals Service, from coverage under the FSLMRS. BOP is among those components affirmatively excluded from coverage by the Executive Order. Although Section 2 of the Executive Order includes an exception for police officers, security guards, and firefighters, this exception explicitly does not apply to employees of the BOP.

In issuing EO 14251, President Trump determined, consistent with the authority granted to him under 5 U.S.C. § 7103(b)(1), that: (1) the BOP has a primary function of intelligence, counterintelligence, investigative, or national security work; and (2) the provisions of the FSLMRS cannot be applied to the BOP in a manner consistent with national security

Exhibit B

requirements and considerations. EO 14251 has been challenged in court. A preliminary injunction issued on June 24, 2025, by the District Court for the Northern District of California, initially prohibited the BOP from implementing the EO. However, that injunction was stayed by the Court of Appeals for the Ninth Circuit on August 1, 2025, and reversed on February 26, 2026. Accordingly, the BOP is permitted to implement the EO.

On April 25, 2025, the Office of Personnel Management (OPM) issued guidance advising Federal agencies not to terminate any Collective Bargaining Agreements "until the conclusion of litigation or further guidance from OPM directing such termination." As such, the BOP took no action at that time. OPM subsequently issued revised guidance related to the Executive Order on September 10, 2025. Notably, the revised guidance advised agencies: "Due to ongoing litigation, agencies should not terminate, abrogate, or repudiate any CBAs with bargaining units represented by the National Treasury Employees Union (NTEU) and impacted by [the Executive Order] only, until the conclusion of litigation or further guidance. Agencies may choose to terminate, abrogate, or repudiate CBAs with other unions, and should consult with their General Counsels to assess next steps regarding those CBAs."

Following the issuance of the revised guidance, and pursuant to EO 14251, on September 25, 2025, the BOP terminated the CBA with CPL-33 along with any other negotiated agreements or MOUs between the BOP, CPL-33, and any local chapters. On February 12, 2026, OPM again advised agencies covered by EO 14251 that they should "terminate or modify all CBAs" for units impacted by EO 14251.

On September 29, 2026, pursuant to a court order issued by the United States District Court, District of Connecticut (3:25-CV-1907, Dkt. No. 72), the BOP's CBA with CPL-33 was reinstated. On October 2, 2026, the Agency notified the Union that it was aware of the Court's September 29, 2026, Order, and was complying with its terms.

The Court's Order was based solely on the conclusion that Bureau leadership had issued inconsistent rationales for terminating the CBA; that order does not preclude the Bureau from issuing a new termination decision after reconsidering the basis for that action. *See* 3:25-CV-01907, Dkt. No. 74. The Agency filed a Notice of Compliance with the Court, *id.*, noting this interpretation. Neither the Court nor the Union has indicated any disagreement regarding the Agency's ability to re-terminate the CBA in a new decision. As such, on October 7, 2026, the Bureau rescinded the previous termination of the CBA, dated September 25, 2025. The Bureau now hereby re-terminates the CBA, based on the following rationales.

## II. Termination of the BOP-AFGE/CPL-33 CBA

As stated above, this memorandum provides notice that effective immediately, BOP is terminating the Master Agreement, as well as any and all amendments, local supplemental agreements, and memoranda of understanding that were in effect subsidiary to the Master Agreement, for all covered BOP employees. The independent bases for this termination decision are explained below:

### 1. The President Excluded the BOP from the FSLMRS' Coverage and the CBA Was Not Intended to Operate Independent of the FSLRMS

The President, acting pursuant to 5 U.S.C. § 7103(b)(1), validly exercised his authority in Executive Order 14251 to exclude the BOP from coverage under the FSLMRS. Because multiple provisions central to the CBA derive their force and operation solely from the statutory framework established by the FSLMRS, it is clear that the CBA was not intended to function independently of that statute.

Under the FSLMRS, employees and unions possess statutory rights that exist only under that chapter. This means that the rights afforded to employees and unions under the FSLMRS—such as an employee's "right … to act for a labor organization in the capacity of a representative" or "to engage in collective bargaining with respect to conditions of employment through representatives chosen by employees under this chapter," *id.* § 7102; or a union's right to be an exclusive representative, *id.* § 7111, or "to act for, and negotiate collective bargaining agreements covering, all employees in the unit," *id.* § 7114—are no longer in effect at the BOP.

The CBA itself presupposes the continuing applicability of the FSLMRS. Several key provisions, including those governing official time, [1] grievance procedures, [2] and arbitration,[3] depend entirely on statutory authority that no longer applies to BOP. Without the FSLMRS, these provisions lack both legal foundation and enforceability. For example, the CBA anticipates review of arbitral awards before the FLRA and, in some circumstances, a right to judicial review of FLRA orders on such awards,[4] but the authority for FLRA review of arbitral decisions stems from the FSLMRS, which is no longer applicable to the BOP.

Because the FSLMRS no longer applies, the Bureau has no ongoing statutory obligation to bargain, to recognize AFGE or CPL-33 as exclusive representatives, or to remain bound by CBAs previously negotiated under the FSLMRS. In light of the exclusion of BOP from the FSLMRS framework, BOP has reconsidered the appropriateness of maintaining a CBA with CPL-33. Maintaining the CBA despite the President's exclusion order has already caused, and will continue to cause, significant and irreparable harm to the Bureau. These harms include substantial monetary, operational, and resource impacts relating to staffing and scheduling, implementation of the First Step Act, staff and inmate safety, necessary infrastructure repairs, adoption of technological advancements, and updating mission-critical policies and procedures. As discussed in Section 2, these monetary, operational, and resource impacts directly interfere with the Agency's ability to meet its national-security duties and responsibilities, as well as its other duties and responsibilities.

---

[1] *See* Article 11.

[2] *See* Article 31(a) ("The purpose of this article is to provide employees with a fair and expeditious procedure covering all grievances properly grievable under 5 USC 7121").

[3] *See* Article 32

[4] *See* Article 31(a) ("The purpose of this article is to provide employees with a fair and expeditious procedure covering all grievances properly grievable under 5 USC 7121"); Article 32(h) (permitting "either party" to "file exceptions to an [arbitration] award as allowed by the Statute"); 5 U.S.C. § 7122 (permitting exceptions to arbitration awards "under this chapter" to be filed with the FLRA); 5 U.S.C. § 7123(a) (permitting "[a]ny person aggrieved by any final order of the Authority" under § 7122 that "involves an unfair labor practice under section 7118 of this title" to seek review in a court of appeals).

The FSLMRS reflects Congress's decision that, at most agencies, the benefits of collective bargaining outweigh the inefficiencies that such bargaining creates. But Congress made a different policy decision with regard to agencies and subdivisions of agencies designated under 5 U.S.C. § 7103(b)(1). With regard to those agencies designated because of their national security functions, Congress concluded that the inefficiencies created by granting employees collective-bargaining rights would not—or at least may not—outweigh the benefits of such bargaining. The BOP agrees with this conclusion, and in light of the inefficiencies that bargaining with CPL-33 has created, the BOP has decided to terminated the CBA.

Termination of this CBA is therefore an appropriate consequence of Executive Order 14251. In light of the above costs and to fully and faithfully implement the President's directive, the Bureau has concluded that termination at the earliest practicable date is appropriate.

**2. Termination of the CBA Is Necessary for the BOP to Fully Implement Its National Security Functions Pursuant to EO 14251**

The President issued EO 14251, making a national security determination regarding the BOP, among other agencies, and concluding that the FSLMRS could not be applied to the BOP in a manner consistent with national security requirements and considerations. Notably, the BOP has direct and primary national security functions, including: (1) incarcerating individuals, including domestic and foreign terrorists, who threaten the safety of Americans, American institutions, and the sovereignty of the United States; (2) monitoring inmate communications to detect and disrupt public safety threats, criminal activities, and terrorist organizations operating within the United States and internationally; and (3) serving as members of both the National Joint Terrorism Taskforce and the FBI Joint Terrorism Task Force. These task forces serve as an integrated force of federal, state, and local law enforcement agencies which combat terrorism on a national and international scale.

As a member of the larger Department of Justice (DOJ) law enforcement community, BOP also works to improve the overall readiness of the United States to respond to various domestic and international threats, including natural disasters, terroristic threats, and other conflicts. For example, the BOP has been instrumental in assisting the Department of Homeland Security in its effort to arrest, detain, house, and deport individuals who enter the United States without appropriate authorization. The BOP also actively supports national, state, and local emergency management efforts by providing resources and personnel as needed.

The EO reflects both the important national security role BOP performs and how collective bargaining negatively affects the BOP's readiness and ability to perform that mission. In addition to the President's constitutional responsibilities for protecting national security, Congress statutorily tasked the President with determining when collective bargaining and other labor rights afforded under the FSLMRS are incompatible with national security considerations.[5] The BOP accordingly credits the President's determination and affirmative exclusion of BOP, as it must, and concludes the continued application of the FSLMRS is inconsistent with the Bureau's national-security duties and responsibilities.

[5] *See* 5 U.S.C. § 7103(b)(1).

After considering the above, the BOP has determined that continued adherence to the CBA is inconsistent with EO 14251, including the President's national security determinations therein. BOP thus chooses to terminate the CBA as inconsistent with and contrary to national security requirements and considerations, as determined by the President, in EO 14251.

### III. Agency Termination Notice

Effective the date of this memorandum and pursuant to EO 14251, *Exclusions from Federal Labor-Management Relations Programs*, the CBA between the BOP and AFGE/CPL-33 (July 21, 2014-May 28, 2029), as well as any and all amendments, local supplemental agreements, and memoranda of understanding that were in effect subsidiary to the Master Agreement, are terminated and no longer in effect. As a result, based on the EO and as of the date of this notice, the Bureau of Prisons no longer recognizes the Counsel of Prison Locals, AFGE, as the exclusive representative for employees of the existing bargaining unit.

To the extent that any employee developed reliance interests on the CBA, the BOP has considered such interests in deciding to terminate the CBA now and does not consider them to outweigh the importance of fully implementing the EO and ensuring consistency with the President's national-security-related conclusion regarding collective-bargaining activities at the BOP. Importantly, following the termination of the CBA, employees will remain fully covered by, among other authorities, applicable provisions of Title 5, United States Code, and regulations issued by OPM; merit system principles and prohibited personnel practice protections; equal employment opportunity and anti-discrimination laws; workplace safety requirements; and the BOP's internal policies and directives (other than those required by or found in its CBA), including BOP's internal grievance procedure.[6] While these authorities may differ from the rights and obligations contained in the CBA, they provide fair and enforceable standards governing pay, leave, hours of work, performance management, discipline, adverse actions, workplace safety, and employee protections that, unlike the CBA's provisions, may be applied consistently with the BOP's national security functions, requirements, and considerations.

To the extent that a union has developed reliance interests on the CBA, those interests are necessarily tempered by the possibility that the President will, as he has here and as other Presidents have done with respect to various agencies dating back to President Carter, exercise their authority under the FSLMRS to remove an agency from that statute's coverage. In any event, any such interests do not outweigh the important goals the BOP seeks to accomplish by terminating this CBA.

For the reasons stated herein, the following actions, among others, consistent with this decision are being taken:

A. The collective bargaining agreement (CBA) between the Bureau of Prisons (BOP) and the Counsel of Prison Locals (July 21, 2014 – May 28, 2029), and as well as any and all amendments, local supplemental agreements, and memoranda of understanding that were in effect subsidiary to the Master Agreement, are no longer in

---

[6] *See* Bureau of Prisons Program Statement 3711.01, *Employee and Labor Management Relations*.

effect. Employees will be required to abide by and be regulated by, Bureau and DOJ policies as well by government-wide laws, rules and regulations.

B. Union dues will no longer be deducted from employees' pay or transmitted to you on their behalf.

C. Union officials may no longer request or be granted official time pursuant to the FSLMRS or any CBAs, amendments, local supplemental agreements, or memoranda of understanding. Any previously approved official time is hereby no longer approved. All employees must report to their currently assigned position of record as of the date of this memo unless they are in an approved leave status.

D. Employees no longer have the right to union representation at formal discussions, investigatory interviews, disciplinary proceedings, third party proceedings or in any other situation unless they have a right to a personal representative and choose a union official to represent them in this personal capacity. Any representative who is also an employee will have to use appropriate leave if they provide representation during work hours.

E. Any and all pending administrative actions filed by the Union on behalf of any employees or group of employees prior to the date of this termination are considered withdrawn by way of this notice. This includes, but is not limited to grievances, invocation of arbitration, unfair labor practices, and information requests. Additionally, any such actions filed or submitted after the date of this notice will be considered improper and will be handled accordingly.

For further information concerning this termination notice, please contact Christopher Wade, Chief, Labor Relations Office.