**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| NATIONAL COUNCIL OF PRISON LOCALS, AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al.*<br><br>*Plaintiffs*,<br><br>v.<br><br>FEDERAL BUREAU OF PRISONS, *et al.*,<br><br>*Defendants*. | Case No. 3:25-cv-01907 |

**JOINT STATUS REPORT**

Pursuant to the Court's October 7, 2026 order, Dkt. No. 76, the parties submit this joint status report concerning (1) the results of their efforts to meet and confer; (2) their respective positions in advance of the October 13, 2026 hearing on Plaintiffs' motion for contempt and the Government's compliance with the Court's preliminary injunction; and (3) any developments concerning the Government's compliance in reinstating the collective bargaining agreement.

On October 8, 2026, Defendants filed a Response to Plaintiffs' motion. ECF No. 79. Attached to Defendants Response was a Declaration of Jonathan Hemingway, Senior Deputy Assistant Director for the BOP Human Resource Management Division and two memoranda transmitted from BOP to CPL-33 on the evening of October 7, 2026: (1) a "Rescission of Termination of Existing Collective Bargaining Agreement" (2025 Termination) and (2) a new "Termination of Existing Collective Bargaining Agreement" (2026 Termination). ECF No. 79-2; 79-3.

On October 8, 2026, the parties met and conferred to discuss Plaintiffs' pending motion and BOP's opposition. Below are parties' respective positions in advance of the October 13,

2026 hearing on Plaintiffs' motion for contempt, or in the alternative, to enforce the Court's preliminary injunction order (ECF No. 72).

**Plaintiffs' Statement:**

For the reasons set forth below, Plaintiffs maintain that the Court should hold Defendants in contempt for their flagrant violations of the court's preliminary injunction, and also enforce the preliminary injunction by making clear that it remains in effect and binding unless and until the Court grants any properly filed motion by Defendants to dissolve or amend the injunction (which Plaintiffs will oppose). Plaintiff thus respectfully request that the Court maintain the October 13 hearing, and if it would aid the Court, Plaintiffs will promptly submit a revised proposed order in light of the events of the last 48 hours.

Defendants' defiance of the Court's injunction over the last ten days has been astounding. The Court's preliminary injunction was clear: "Defendants shall immediately reinstate the CBA, as well as any amendments, local supplemental agreements, and memoranda of understanding that were in place subsidiary to the CBA, for the remainder of the agreed-upon term provided in the CBA." ECF No. 72 at 32.

Rather than immediately reinstate the CBA as the Court ordered, on October 2, three days after the Court's Order, Defendants filed a "Notice of Compliance" that included one sentence stating that Defendants "aver they are complying" with the terms of the Order and then eleven pages of briefing on what Defendants view as the limits of the Order.

In the week following the Court's entry of the preliminary injunction—which required the "immediate[] reinstate[ment]" of the CBA, ECF No. 72 at 32—Defendants failed to take diligent steps to comply with the Order. Plaintiffs submitted declarations with their Motion attesting to BOP's continuing refusal to give effect to the CBA, including apparent directions to

wardens not to comply with the Court's order. *See* ECF No. 75-1 at 5-7, ECF No. 76. When Plaintiffs' counsel directly requested on October 1 and 6 that Defendants report the measures that they have taken to comply, Defendants' counsel listed none. ECF No. 75-1 at 4-5.

When the Court ordered Defendants to provide information on their steps to purportedly comply, Defendants did not deny any of the specific statements or incidents recounted in Plaintiffs' declarations. Instead, they provided information on a handful of acts in compliance, provided a few ways regional and local management officials had been instructed to take steps or consider taking steps that would go toward honoring the CBA, and described making preparations to take other steps that "would take time" or in which they "expected to engage." ECF No. 79 at 7–9. Those statements all ring hollow because BOP knew full well that they were planning to promptly re-terminate the CBA. BOP was simply buying time to do that.

On October 6, 2026, Plaintiffs filed their motion for contempt and/or to enforce the preliminary injunction. The *next day*, BOP issued a memorandum purporting to "rescind[]" the memorandum terminating the CBA and to "rescind[]" the Message from the Director that this Court found to be decisive evidence that BOP's stated reason for the termination was likely pretextual. Strikingly, BOP also purported to rescind the "statements or implications" of that Message and any other "communications, videos, or announcements," to the extent they "stated or implied" that the CBA termination was not for purposes related to EO 14251. ECF No. 79-2. It is unclear what other "communications, videos, or announcements" the Director was referencing, since none were included in the administrative record despite their obvious relevance to the termination.

Simultaneously on October 7, BOP released a memorandum purporting to "issue[] a fresh decision re-terminating the CBA on October 7, 2026." ECF No. 79 at 1, ECF No. 79-1. That

memorandum purports to re-terminate the CBA on "independent bases" that the CBA was not intended to operate independent of the FSLRMS—an argument this Court has already rejected—and on the basis of a purported finding that termination of the CBA is "[n]ecessary" to implement BOP's national security functions. ECF No. 79-3 at 2-4.

At no point did Defendants move this Court to dissolve or clarify its injunction.

1. *The Court should hold Defendants in contempt.*

Defendants should be held in civil contempt for their blatant failure to comply with the Court's Order. As outlined in Plaintiffs' motion and discussed above, Defendants did not take reasonable actions to comply with the Order prior to Plaintiffs' filing the motion. Since Plaintiffs filed that motion on October 6, Defendants have only doubled down on their refusal to comply with the injunction's plain terms, by purporting to re-terminate the CBA.

This Court's Order could not be clearer: "immediately reinstate the CBA, as well as any amendments, local supplemental agreements, and memoranda of understanding that were in place subsidiary to the CBA, for the remainder of the agreed-upon term provided in the CBA." ECF No. 72 at 32. As of the date of this filing, a mere ten days after the Order, the CBA is not "immediately reinstated . . . for the remainder of the agreed-upon term provided in the CBA." Defendants have instead re-terminated the CBA, effective immediately, and are thus taking no steps in compliance with the Order. Defendants are in direct violation of the injunction.

Defendants had options if they believed that the injunction should be dissolved or modified to permit them to re-terminate—they could have filed a motion seeking that relief. *See, e.g. Am. Fed'n of Gov't Emps., AFL-CIO v. Noem*, No. 2:25-CV-00451-JNW, 2026 WL 113599, at *3 (W.D. Wash. Jan. 15, 2026) ("a party subject to an injunction who believes compliance is no longer required must move to modify or dissolve the injunction–and that motion must be

granted before the party can cease compliance."). But unless and until the Court grants any such motion, they must comply with this Court's order. *See In re Crim. Contempt Proc. Against Gerald Crawford, Michael Warren*, 329 F.3d 131, 138 (2d Cir. 2003) ("persons subject to an injunctive order . . . are expected to obey that decree until it is modified or reversed").

Instead, Defendants engaged in self-help, effectively granting themselves such a motion. Defendants informed the Court of their own interpretation of the Order, waited three business days, and then, having not yet received a rebuke, acted pursuant to that interpretation. And now, Defendants remarkably claim that this Court implicitly blessed their self-help by not intervening in that 3-business-day window. That is not how the judicial system works in this country.

Nothing about Defendants' actions leading up to or in re-terminating the CBA can be seen as a diligent or reasonable attempt to comply with the Order.

2. *The Court should enforce the preliminary injunction by making clear it is still in effect and binding.*

Plaintiffs further and now affirmatively request that the Court enforce its order, by simply confirming that it remains in effect and requires compliance with its plain terms, unless and until the Court acts on a properly filed motion to dissolve or modify the preliminary injunction. The consequence of entering that enforcement order will be to make clear that the recent re-termination is void, because the re-termination is incompatible with the CBA be reinstated for the duration of its term.

Should Defendants file a motion to dissolve or amend the CBA, Plaintiffs will oppose it in due course. Plaintiffs will have substantial grounds to oppose any such request, likely including that the rationales for terminating the CBA remain contrived for the same reasons the Court has already found. Defendants' pronouncement that they have post-hoc "rescinded" all of the evidence of pretext appears to be more of a confession of guilt than basis for finding a lack of

pretext this time around.

**Defendants' Statement:**

The Bureau of Prisons' ("BOP") position is set forth in both its notice of compliance, ECF No. 74, and Opposition to the motion for contempt or alternatively to enforce, ECF No. 77. To summarize, the BOP has complied with the Court's September 29, 2026, preliminary injunction. Immediately following the Order, BOP senior managers met to discuss compliance; reinstated the CBA; diligently worked over the last week to "turn back on" normal operations under the reinstated CBA prior to its re-termination on October 7, 2026; and communicated instructions to the six BOP regional directors to comply with the re-instated CBA, all of which is described in detail within the Declaration of Jonathan Hemingway, Senior Deputy Assistant Director for the BOP Human Resource Management Division, ECF No. 79-1. As Mr. Heminway describes, certain efforts took time after more than a year since the CBA had been originally terminated, such as the matter of finding physical space to provide to the union at BOP's 122 institutions covered by that agreement. It is unsurprising that union would occasionally accuse BOP of violating the CBA between the Court's Order and the re-termination in its treatment of one of the 30,000 employees (as was the case prior to the September 25, 2025 termination). But this is not evidence of the CBA not being reinstated or the BOP failing to comply with the Court's injunction. Indeed, such matters could have been rectified through the *reinstated CBA itself in* the normal grievance procedures pursuant to Article 31 (again, as was the case prior to the September 25, 2025, termination). While Plaintiffs allege that wardens have been told not to comply with the preliminary injunction and not to work with the union, BOP avers no such guidance was given by BOP leadership and indeed was contrary to the instruction of BOP senior leadership in its focus on implementation and compliance.

As outlined in its response to the contempt motion, Plaintiffs improperly seek to convert the Court's injunction, which required reinstatement of the CBA, into judicial supervision and enforcement of every contract term, under threat of contempt. The BOP's reinstatement of the CBA prior to its re-termination restored the contractual mechanisms available before termination and did not create a new right for Plaintiffs to bypass those processes and seek judicial enforcement through contempt for each instance of an alleged CBA term violation. Moreover, federal law prohibits courts from ordering specific performance of government contracts of this type. Because the Bureau complied with the Court's order and because Plaintiffs' motion seeks relief beyond the scope of that order, the motion for contempt or enforcement should be denied.

Finally, Plaintiffs state in the contempt motion that Defendants' notice of compliance, "outlines certain matters that Defendants 'do not understand the injunction' to require or permit the Court to enforce," Mot. Memorandum of Law, ECF No. 75-1, p. 1, but Plaintiffs did not otherwise address or dispute the part of Defendant's Notice of Compliance stating Defendants do not understand the preliminary injunction to bar Defendants from re-terminating the CBA in a fresh decision before the end of the CBA's term. Rather than filing a new motion, Plaintiffs now suggest for the first time to the Court in this status report that the BOP's re-termination violates the Court's preliminary injunction order and Defendants could have filed a motion seeking the dissolution or modification of the preliminary injunction and point to *Am. Fed'n of Gov't Emps., AFL-CIO v. Noem*, No. 2:25cv00451, 2026 WL 113599, at *3 (W.D. Wash. Jan. 15, 2026) as an example.[1] Defendants reserve the right to

[1] *Am. Fed'n of Gov't Emps., AFL-CIO* dealt with an entirely different preliminary injunction following that Court's determination Plaintiffs were likely to succeed on violations of the First and Fifth Amendments and the APA:

> Defendants and all their respective officers, agents, servants, employees, and attorneys are hereby enjoined from the following:

respond to Plaintiffs' arguments about the impact of the new termination in response to an appropriately filed motion by Plaintiffs. But, as outlined in Defendant's notice of compliance, the Court's Order clarified that Plaintiffs challenged only the BOP's September 25, 2025, termination of the CBA, not the validity of Executive Order 14,251, and the Court did not rule out the possibility that the BOP could lawfully terminate the CBA in a fresh decision in the future. An injunction barring any future termination would be improper because: (1) under the principle of party presentation, the Court may adjudicate only the specific agency action Plaintiffs put at issue, *i.e.* the September 25, 2025 termination, not hypothetical future actions; (2) Article III of the Constitution prohibits advisory relief on speculative future conduct, and any new termination would involve a different record and agency rationale not before the Court; and (3) equitable relief must be narrowly tailored to the specific violation alleged, meaning the remedy can address only the challenged September 25, 2025 action, consistent with the APA's recognition that agencies may revisit decisions through new, procedurally proper actions. *See DHS v. Regents of the Univ. of California*, 591 U.S. 1, 21 (2020) (quoting

---

1. Enforcing, implementing, or otherwise giving effect to the Noem Determination's purported recission of the 2024 CBA between TSA and AFGE and/or its determination that the 2024 CBA is no longer applicable or binding;

2. Denying Plaintiffs, their members, and all bargaining unit TSOs any and all rights and/or working conditions guaranteed in the 2024 CBA; and

3. Enforcing or implementing the Noem Determination's termination of functions, processes, and obligations arising out of the 2024 CBA, including but not limited to the termination of pending grievances and arbitrations brought pursuant to the 2024 CBA.

Additionally, the Court ORDERS Defendants to immediately notify bargaining unit TSOs that pursuant to this Order, the 2024 CBA remains applicable and binding, such that all rights contained in the CBA are restored to the pre-Noem Determination status quo, including but not limited to the right of AFGE to serve as exclusive representative, the right of TSOs to request representation in connection with an investigation, the right of TSOs to pay their membership dues through payroll deduction (such that payroll deduction of dues will be restarted for TSOs who have previously requested it), the right to use official time as set forth in the CBA, contractual protections regarding discipline and adverse actions, and the right to use the contractual grievance and arbitration process. Furthermore, Defendants must notify bargaining unit TSOs that pursuant to this order, currently pending grievances and arbitrations submitted pursuant to the 2024 CBA will continue to be processed.

No. 2:25-CV-00451, at ECF No. 39, pp. 40-41 (W.D. Wash. Jun. 2, 2025)

*SEC v. Chenery Corp.*, 332 U.S. 194, 201 (1947)); *Biden v. Texas*, 597 U.S. 785, 788 (2022) (explaining that the agency has the option to "'deal with the problem afresh' by taking *new* agency action"). Following the Court's determination that the Defendant's September 25, 2025, termination was arbitrary and capricious, the BOP dealt with the problem afresh by taking new agency action.

In sum, it is the Defendants' position is that they have already complied with the Court's Order, the relief Plaintiffs seek via the contempt motion exceeds the relief afforded in the Court's Order, and the Court's Order did not (and cannot) bar Defendants from re-terminating the CBA in a fresh decision before the end of the CBA's term. After filing the Motion, Plaintiffs' Counsel acknowledged they subsequently became aware of earlier instances demonstrating the CBA was reinstated and the BOP was taking actions effectuating its terms, which undercut their assertion that Defendants had taken no steps to effectuate the Court's Order. *See* Notice, SCF No. 78. Defendants thus respectfully submit that the October 13 hearing is not necessary.

Dated: October 9, 2026

Respectfully submitted,

/s/ Lynn D. Eisenberg
Lynn D. Eisenberg (D.C. Bar 1017511)*
Daniel F. Jacobson (D.C. Bar 1016621)*
Brian C. Rosen-Shaud (DC Bar 90042065)*
Jacobson Lawyers Group PLLC
5100 Wisconsin Ave NW, Suite 301
Washington, D.C. 20016
(301) 823-1148
dan@jacobsonlawyersgroup.com

*Admitted *pro hac vice*

By: *<u>/s/Logan J. Place</u>*
Logan J. Place (ct31874)
Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.
557 Prospect Avenue, 2nd Floor
Hartford, CT 06105
(860) 233-9821
ljplace@lapmk.org

*Counsel for Plaintiffs*

David X. Sullivan
United States Attorney

*<u>/s/J. Brian Meskill</u>*___________
J. Brian Meskill (ct29611)
Assistant United States Attorney
450 Main Street, Rm. 328
Hartford, CT 06103
T: (203) 821-3700
F: (203) 773-5373
Brian.Meskill@usdoj.gov

BRETT A. SHUMATE
Assistant Attorney General

Jeremy Mauritzen (CA Bar 354615) Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 598-7315
Email: jeremy.mauritzen@usdoj.gov

*Counsel for Defendants*