UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NATIONAL COUNCIL OF PRISON LOCALS, *et al.*,<br><br>Plaintiffs,<br><br>-against-<br><br>FEDERAL BUREAU OF PRISONS, *et al.*,<br><br>Defendants. | | **MEMORANDUM & ORDER**<br><br>3:25-CV-1907 (VDO) |

**VERNON D. OLIVER**, United States District Judge:

Before the Court is a Motion for Contempt or in the Alternative to Enforce (the "Motion") brought by plaintiffs, the National Council of Prison Locals, American Federation of Government Employees ("CPL-33") and AFGE Local 1661 ("Local 1661") (collectively, "Plaintiffs"). The Motion seeks to hold defendants, the Federal Bureau of Prisons ("BOP") and William K. Marshall, III, in his official capacity as Director of the BOP (collectively, "Defendants"), in civil contempt of this Court's September 29, 2026, preliminary injunction order (the "PI Order") for failing to reinstate and ultimately re-terminating[1] CPL-33's collective bargaining agreement (the "CBA") and the agreements subsidiary to the CBA. In the alternative, Plaintiffs ask the Court to issue an order to enforce its injunction. For the

[1] In the Motion, Plaintiffs initially sought relief based only on Defendants' failure to reinstate the CBA. BOP terminated the CBA the day after Defendants filed the Motion. Plaintiffs then informed the Court in both a subsequent joint status report and during oral argument that they are seeking contempt and enforcement based on the re-termination. *See* ECF No. 80; Oral Arg. Tr., ECF No. 83 at 7:18–8:22.

reasons that follow, the Court **DENIES** Plaintiffs' request for a finding of contempt, but **GRANTS** the Motion insofar as it seeks enforcement of the PI Order.

## I. BACKGROUND

The Court assumes familiarity with the facts in this case, as recently recounted in the PI Order. For the purpose of deciding the Motion, the Court recounts the following:

On September 29, 2026, the Court granted Plaintiffs' Motion for Preliminary Injunction and Preliminary Relief Under 5 U.S.C. § 705 (the "PI Motion") and ordered Defendants to immediately reinstate the CBA, as wPell as any subsidiary agreements.[2] Specifically, the Court stated:

> The September 25, 2025, termination of the CBA is preliminarily set aside and enjoined. Defendants shall immediately reinstate the CBA for the remainder of the agreed-upon term provided in the CBA, and shall be governed by the terms of that agreement. Defendants shall also reinstate any amendments, local supplemental agreements, and memoranda of understanding that were in place subsidiary to the CBA.[3]

Three days later, on October 2, 2026, Defendants notified the Court of their intention to comply with the PI Order by filing a Notice of Compliance.[4] The Notice of Compliance stated that "Defendants are aware of the Court's Order and aver they are complying with its terms."[5] The Defendants also used the Notice to explain that they did not understand the Court's order to: (1) preclude the BOP from re-terminating the CBA in a fresh decision before the end of the CBA's term; or (2) mean that the Court intends to supervise every instance in

---

[2] PI Order, ECF No. 72 at 2.

[3] *Id.*

[4] *See* Notice, ECF No. 74.

[5] *Id.*

which the BOP is alleged to have violated the CBA.[6] Plaintiffs did not respond directly to the Notice of Compliance.

Instead, on October 6, 2026, Plaintiffs filed the instant Motion.[7] In it, they allege that BOP defied the PI Order by refusing to reinstate the CBA. As evidence of BOP's noncompliance with the PI Order, Plaintiffs cite reports from CPL-33's regional and local leaders stating that, as of October 5, 2026, wardens had not received guidance from BOP about reinstating the CBA, or they have been instructed to "do nothing" to implement it, in defiance of the PI Order.[8] According to Plaintiffs, wardens have refused to recognize union representatives at employee discipline meetings,[9] union office space has not been restored, and official time requests have either been denied or ignored.[10] In one instance, a BOP employee requested union representation at a disciplinary action. The warden denied the employee's request, stating, "there ain't no union," and required the employee to proceed with the meeting without a union representative.[11] She continued to request union representation during the disciplinary meeting, but those requests were also denied on the grounds that there "was no union."[12] At the conclusion of the meeting, the employee was terminated from her position.[13] Plaintiffs further report that, before this Court issued the PI Order, Director Marshall was

[6] *Id.* at 5–10.

[7] *See* Mot., ECF No. 75.

[8] White Supp. Dec., ECF No. 75-2 ¶¶ 6–8, 10.

[9] *Id.* ¶ 9.

[10] *Id.* ¶ 17.

[11] Rolfe Dec., ECF No. 75-6 ¶¶ 4–7.

[12] *Id.* ¶ 9.

[13] *Id.* ¶ 8.

witnessed stating that he would only reinstate the CBA with CPL-33 if the White House directed him to do so.[14] Further, as of October 5, 2026, BOP had not provided CPL-33 with a plan or timeline for implementing the PI Order or reinstating the CBA.[15]

Plaintiffs then supplemented the Motion on October 7, 2026, with a Notice.[16] The Notice updated the record by informing the Court that, after filing the Motion, Plaintiffs' counsel learned that Defendants had approved some official time requests, approved a request for union space, and granted approval for union representation at a committee meeting.[17] The Motion initially stated that Defendants had taken no steps to effectuate the PI Order, and accordingly, the supplementary notice was provided to update the record after Plaintiffs' counsel learned of certain steps taken by Defendants to reinstate the CBA.[18]

Per the Court's order expediting briefing,[19] Defendants filed their opposition to the Motion (the "Opposition") on October 8, 2026.[20] In the Opposition, Defendants argued that they took steps to implement the CBA until Director Marshall decided to re-terminate the agreement on October 7, 2026. Defendants appended a Supplemental Declaration by Senior Deputy Assistant Director for the BOP Human Resource Management Division ("HRMD") Jonathan Hemingway to the Opposition (the "Hemingway Declaration") to explain

---

[14] Cole Dec., ECF No. 75-3 ¶¶ 4–5; Osborn Dec., ECF No. 75-4 ¶¶ 4–5; Mason Dec., ECF No. 75-4 ¶¶ 4–5.

[15] ECF No. 75-2 ¶ 6.

[16] *See* Notice, ECF No. 78.

[17] *Id.* at 1.

[18] *Id.*

[19] *See* Order, ECF No. 76.

[20] *See* ECF No. 79.

Defendants' steps toward compliance and how Director Marshall made the ultimate decision to re-terminate the CBA. The Hemingway Declaration reports that, on September 30, 2026, and October 1, 2026, BOP senior managers and their legal representatives met to discuss compliance with the PI Order.[21] As a result of those meetings, Assistant Director (HRMD) Malia Wilber sent CPL-33 President Brandy Moore White a memorandum that explained that BOP was complying with the PI Order and reinstating the CBA.[22] On October 5, 2026, nearly a week after the Court issued the PI Order, leadership from HRMD met with BOP's regional directors and directed them to instruct wardens within their regions to ensure compliance with its terms.[23]

Two days later, on October 7, 2026, Director Marshall issued a memorandum to CPL-33 President White (the "Rescission Memorandum"), that purported to rescind the Message from the Director issued on September 25, 2025, as well as the September 25, 2025, memorandum terminating the CBA.[24] It also claimed to rescind "any other contemporaneous communications by [Director Marshall's] office related to such rescission including, but not limited to, written communications, videos, and Sallyport announcements."[25] That same day, Director Marshall issued another memorandum to President White with the subject line "Termination of Existing Collective Bargaining Agreement" (the "Re-termination

[21] Hemingway Dec., ECF No. 79-1 ¶¶ 8–10.

[22] *Id.* ¶ 10.

[23] *Id.* ¶ 11.

[24] *Id.* ¶ 12; *see also* Ex. A to Hemingway Dec., ECF No. 79-2.

[25] ECF No. 79-2 at 1. These communications were not part of the administrative record or otherwise provided to the Court. At oral argument, Plaintiffs also noted that they were not previously aware of these additional communications and had not had the opportunity to review them. ECF No. 83 at 28:12–17.

Memorandum").[26] This memorandum informed CPL-33 that, as of October 7, 2026, the BOP was terminating the CBA, as well as all amendments, local supplemental agreements, and memoranda of understanding that were in effect subsidiary to the CBA.[27] As a basis for re-terminating the CBA, BOP stated: (1) that the CBA was not intended to function outside of the FSLMRS, and must now be terminated as it was excluded from that statute by EO 14,251; and (2) termination is necessary pursuant to the national security concerns outlined by President Trump in EO 14,251.[28]

Per the Court's order, the parties filed a joint status report on October 9, 2026. In the status report, Plaintiffs asked the Court to hold Defendants in contempt both for BOP's failure to timely take actions to reinstate the CBA (as initially requested in the Motion), and based on BOP's re-termination of the CBA without first moving this Court to dissolve or clarify the PI Order.[29] In response, Defendants reiterated their argument that the Court lacks the power to monitor reinstatement and compliance with the CBA, and instead, alleged violations of the CBA should be rectified through the reinstated CBA itself through normal grievance procedures.[30] Defendants further explain that failures to comply with the CBA during the period between the issuance of the Court's PI Order and the October 7, 2026 re-termination date were a result of the administrative burden in implementing the CBA—not intentional noncompliance with the PI Order. In response to Plaintiffs' request for contempt or

---

[26] Ex. B. to Hemingway Dec., ECF No. 79-3 at 1.

[27] *Id.*

[28] *Id.* at 3–5.

[29] ECF No. 80 at 2–4.

[30] *Id.* at 6.

enforcement based on the re-termination, Defendants claimed that this was a new agency action that is unreviewable by this Court in the instant case.[31]

The Court held oral argument on the Motion on October 13, 2026.[32] At oral argument, Plaintiffs reaffirmed their position first outlined in the October 9, 2026, joint status report that the Court should hold Defendants in contempt and enforce the PI order based on both the failure to reinstate the CBA and the ultimate re-termination of that agreement.[33]

## II. <u>DISCUSSION</u>

### A. Enforcing the PI Order

The Court first addresses Plaintiffs' request that this Court enforce the PI Order. "Ensuring compliance with a prior order is an equitable goal which a court is empowered to pursue even absent a finding of contempt." *Berger v. Heckler*, 771 F.2d 1556, 1569 (2d Cir. 1985). "In enforcing its orders, a district court may take such steps as are appropriate given the resistance of the noncompliant party." *Id.*; *In re Tronox Inc.*, 855 F.3d 84, 112 (2d Cir. 2017) (noting that a district "court's choice of how to enforce the order is reviewed for abuse of discretion" and that "a court can take any reasonable action to secure compliance" (cleaned up)); *see also United States v. Visa U.S.A., Inc.,* No. 98-CV-7076, 2007 WL 1741885, at *12 (S.D.N.Y. June 15, 2007) (enforcing a court order "to give present effect" to the judgment, not as a sanction).

There are two distinct issues before the Court on Plaintiffs' motion for enforcement. First, whether the re-termination of the CBA constituted a violation of the PI Order. Second,

---

[31] *Id.* at 8–9.

[32] *See* Minute Entry, ECF No. 82.

[33] *See generally* ECF No. 83.

whether Defendants failed to reinstate the CBA during the period between the issuance of the PI Order on September 29, 2026, and the purported re-termination on October 7, 2026. As to the first issue, the Court **grants** the motion for enforcement and finds that the BOP's attempted re-termination of the CBA on October 7, 2026, violated the PI Order. However, the Court **denies** Plaintiffs' motion for enforcement as it pertains to the second issue. Plaintiffs failed to demonstrate that Defendants violated the PI Order by refusing to reinstate the CBA during the week in between the issuance of the PI Order and the re-termination.

### 1. Re-termination

Regarding the October 7, 2026 re-termination, the core issue before the Court is whether Defendants were required to move the Court to either dissolve, amend, or clarify the PI Order before unilaterally re-terminating the CBA. Plaintiffs argue that Defendants improperly engaged in "self help" by terminating the CBA without first applying to the Court. Defendants, in response, contend that they were not required to move the Court for dissolution of the PI Order because the re-termination constituted a new agency action. The Court agrees with Plaintiffs.

Even when party disagrees with a court's imposition of injunctive relief, "persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." *JPMorgan Chase Bank, N.A. v. VTB Bank, P.J.S.C.*, No. 24-CV-2924, 2024 WL 3567418, at *5 (S.D.N.Y. July 29, 2024), *aff'd*, No. 24-2327, 2025 WL 1983432 (2d Cir. July 17, 2025) (cleaned up). "It is a matter 'of respect for the judicial process.'" *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 656 (2d Cir. 2004) (quoting *GTE Sylvania, Inc. v. Consumers Union*, 445 U.S. 375, 387 (1980)). "Disagreements with

judicial decisions must be resolved through motions, stays, and appeals, not through unilateral noncompliance." *Am. Fed'n of Gov't Emp., AFL-CIO v. Noem*, No. 25-CV-451, 2026 WL 113599, at *3 (W.D. Wash. Jan. 15, 2026) (cleaned up); *see also Maness v. Meyers*, 419 U.S. 449, 458 (1975) ("If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal.").

Relying on *Biden v. Texas*, 597 U.S. 785 (2022), Defendants assert the Court is barred from reviewing the re-termination because it is a new agency action, and the Court may only adjudicate the specific agency action Plaintiffs put at issue (here, the September 25, 2025, termination).[34] Defendants failed to mention, however, that in *Biden v. Texas*, the Government agency continued complying with the District Court's injunction, despite issuing a new action, and then properly moved to vacate the injunction. 597 U.S. at 796. Defendants in that case stated that the new agency action "would be implemented as soon as practicable after a final judicial decision to vacate." *Id.* (cleaned up). At no point did the defendants in *Biden v. Texas* seek to disregard a court order. Instead, they complied with the injunction, despite issuing a new action, and only sought to implement it after moving to vacate the original injunction. *Biden v. Texas* is thus distinguishable, as it does not bear on a district court's equitable remedial powers to secure compliance with an injunction.

Here, in contrast, the Defendants failed to move the Court for amendment, clarification, or dissolution. Instead, it filed a "Notice of Compliance," and construed Plaintiffs' (and the Court's) lack of an immediate response to the Notice as an implicit grant of authority to re-

[34] ECF No. 80 at 8.

terminate the CBA. But a "Notice of Compliance" is an inferior substitute for appropriately moving the Court to amend, clarify, or dissolve the PI Order. Only a week before re-termination, the Court ordered Defendants to "immediately reinstate the CBA ***for the remainder of the agreed-upon term*** provided in the CBA."[35] The agreed upon term of expiration for the CBA is May 28, 2029.[36] Rather than abiding by this order, Defendants issued the Re-termination Memorandum, which purported to terminate the CBA under new rationale. But an agency may not use "new rationale" to justify a "unilateral decision to abandon its obligations under the injunction." *Am. Fed'n of Gov't Emp.,* 2026 WL 113599, at *3.

Accordingly, in exercising its jurisdiction to interpret and enforce its own prior order, *In re Tronox Inc.*, 855 F.3d at 112, the Court grants Plaintiffs' motion to enforce the PI Order as it pertains to the October 7, 2026, re-termination of the CBA. The re-termination is **VOID** because Defendants unilaterally terminated the CBA without first moving the Court to modify the PI Order. The CBA shall remain in effect until either the expiration of the agreed upon term of the agreement on May 28, 2029, or until the Court grants a properly filed motion by Defendants to dissolve or clarify the PI Order to permit re-termination.

**2. Reinstatement**

The Court next turns to whether Defendants' actions during the week in which the CBA was reinstated require an order from this Court enforcing the preliminary injunction.

---

[35] PI Order, ECF No. 72 at 2 (emphasis added).

[36] The Hemingway Declaration confirms that "[t]he most recent version of the Master Agreement was signed by the then Director of the Bureau of Prisons and the CPL-33 President on July 21, 2014, and was extended (with amendments) up to and through May 28, 2029." ECF No. 79-1 ¶ 6.

First, Defendants took sufficient measures to begin the process of implementing the CBA after it was reinstated by the Court's order. For instance, following the issuance of the PI Order, BOP directed local management officials to begin reviewing the hundreds of official time requests they received; BOP stopped issuing policies using the policy development process it implemented during the initial CBA termination; and it instructed institutions to identify alternate space for unions to use because the office space previously provided to the unions BOP had been repurposed.[37] Indeed, at oral argument, counsel for Plaintiffs recognized that, "in the immediate days prior to termination," Defendants "began to take steps consistent with" the PI Order.[38] The Court agrees. These actions appear to be steps towards implementing the requirements of the CBA, not a willful disregard of the PI Order. Further, individual instances of noncompliance with the CBA, such as failing to allow union representation at disciplinary proceedings or delaying responses to official time requests, are properly addressed under the agreement itself. The CBA has an extensive grievance process for managing individual complaints of noncompliance. Those concerns are properly addressed under the CBA—not by this Court. Accordingly, the Court will not exercise jurisdiction over every compliance dispute when the agreement provides a grievance process to handle those exact issues.

Second, Plaintiffs' allegations that wardens received guidance from BOP management not to reinstate the CBA or comply with its terms are combatted by the Hemingway Declaration. Specifically, the Hemingway Declaration states that HRMD management is

[37] ECF No. 79-1 ¶¶ 14–16.

[38] ECF No. 83 at 16:14–18.

unaware of such communications, and any statement to this effect is "inconsistent with the BOP's position," and "inconsistent with guidance issued to the Regional Directors"[39] Although the Defendants certainly could have informed all management personnel, including Regional Directors and wardens immediately and simultaneously after the Court's PI Order, the Court finds no reason to discredit this statement in the Hemingway Declaration to find that it was the policy of BOP to direct its wardens not to comply with the PI Order.

Third, Plaintiffs argue that Defendants violated the PI Order because Director Marshall stated he would only comply with any order issued by this Court if he was directed to do so by the White House. Because Director Marshall made this statement before the Court issued the PI Order, it does not support Plaintiffs' argument that BOP failed to comply. In the declarations Plaintiffs submitted to the Court, witnesses aver that Director Marshall was asked a hypothetical: namely, "whether, if the judge granted relief requiring BOP to reinstate the union, Director Marshall would honor that ruling."[40] In response, Director Marshall stated that he would only honor this Court's ruling if the White House directed him to do so.[41] Director Marshall's response to a hypothetical question asked before the Court issued the PI Order is not sufficiently conclusive as to whether BOP ultimately complied with the preliminary injunction.

[39] ECF No. 79-1 ¶ 27.

[40] ECF No. 75-4 at 2.

[41] *Id.*

For these reasons, the Court **DENIES** Plaintiffs' motion to enforce as it pertains to the period of reinstatement between September 29, 2026 (the PI Order issuance date) and October 7, 2026 (the re-termination date).

### B. Civil Contempt

The Court also denies Plaintiffs' request to hold Defendants in civil contempt for failing to reinstate or for re-terminating the CBA.[42] While the Court has the authority to issue a civil contempt finding "for failure to comply with a Court order," *Paramedics Electromedicina*, 369 F.3d at 655, doing so at this stage is premature. Because the Court has already issued an order enforcing the preliminary injunction and voiding the October 7, 2026, re-termination of the CBA, a finding of civil contempt is not necessary at this time.

## III. CONCLUSION

For the foregoing reasons, the Court finds that the October 7, 2026, re-termination of the CBA is **VOID**, as Defendants failed to move the Court for clarification or dissolution of the PI Order before unilaterally re-terminating the CBA. The CBA shall remain in effect until either the expiration of the agreement on May 28, 2029, or until the Court grants a properly filed motion by Defendants to dissolve or clarify the PI Order to permit re-termination.[43] In

---

[42] *See generally* ECF No. 75.

[43] The PI Order states: "The September 25, 2025, termination of the CBA is preliminarily set aside and enjoined. Defendants shall immediately reinstate the CBA for the remainder of the agreed-upon term provided in the CBA, and shall be governed by the terms of that agreement. Defendants shall also reinstate any amendments, local supplemental agreements, and memoranda of understanding that were in place subsidiary to the CBA." The CBA was originally executed on July 21, 2014, and most recently extended through amendments up to and through May 28, 2029. ECF No. 79-1 ¶ 6.

light of the Court's enforcement of its PI Order, Plaintiffs' request that the Court hold Defendants in civil contempt is **DENIED**.

**SO ORDERED.**

Hartford, Connecticut
October 16, 2026

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge