**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| NATIONAL COUNCIL OF PRISON LOCALS et al., Plaintiffs, | : | No.: 3:25cv1907 (VDO) |
| v. | : | |
| FEDERAL BUREAU OF PRISONS et al., Defendants. | : | October 20, 2026 |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR EMERGENCY MOTION FOR CLARIFICATION OR, ALTERNATIVELY, FOR MODIFICATION OR DISSOLUTION OF PRELIMINARY INJUNCTION**

Pursuant to Local Civil Rule 7(a), Defendants, the Federal Bureau of Prisons ("BOP") and William K. Marshall III, in his official capacity as Director of the BOP, hereby respectfully move for clarification from the Court that its September 29, 2026, Preliminary Injunction Memorandum & Order ("PI Order") permits re-termination of the collective bargaining agreement ("CBA") between the BOP and National Council of Prison Locals, American Federation of Government Employees ("CPL-33"), on the basis of a fresh agency decision and explanation. If the preliminary injunction is not so clarified, this Court should in the alternative modify or dissolve the preliminary injunction to permit such re-termination.

The PI Order, p. 2, ECF No. 72, states, in part:

> The September 25, 2025, termination of the CBA is preliminarily set aside and enjoined. Defendants shall immediately reinstate the CBA for the remainder of the agreed-upon term provided in the CBA, and shall be governed by the terms of that agreement. Defendants shall also reinstate any amendments, local supplemental agreements, and memoranda of understanding that were in place subsidiary to the CBA.

As stated in its notice of compliance, ECF No. 74, Defendants understand the injunction to require that BOP immediately reinstate the CBA. Defendants, however, did not understand the injunction

to constrain the BOP from re-terminating the CBA in a fresh decision before its May 28, 2029, expiration because Plaintiffs did not request that relief and that relief would not be appropriate based on the theory on which the Court found a likelihood of success for Plaintiffs.

In the Memorandum & Order on Plaintiffs' Motion for Contempt or in the Alternative to Enforce ("Enforcement Order"), ECF No. 84, the Court did not find there was anything substantively impermissible about BOP's re-termination but stated that "a 'Notice of Compliance' is an inferior substitute for appropriately moving the Court to amend, clarify, or dissolve the PI Order." *Id.*, p. 10. Thus, the Court concluded that "[t]he CBA shall remain in effect until either the expiration of the agreed upon term of the agreement on May 28, 2029, or until the Court grants a properly filed motion by Defendants to dissolve or clarify the PI Order to permit re-termination." *Id.*

Under Local Civil Rule 7(a)(6), "[a] party may request expedited consideration by the Court of a motion by designating the motion as one seeking 'emergency' relief and demonstrating good cause in the motion." Defendants request expedited consideration by the Court, as the BOP's re-termination was voided by the Court and the BOP has since been unable to terminate the CBA unless and until the Court grants this motion. Any further delay significantly impacts the executive branch's ability to effectuate a Presidential executive order—effectively impeding an agency from taking fresh action, which is permissible following vacatur under the Administrative Procedure Act ("APA"). Defendants respectfully request the Court set forth the same 10-day timeline for briefing and a decision as was afforded to Plaintiffs' motion for contempt or in the alternative to enforce the Court's Order, ECF No. 75 ("Enforcement Motion"). Good cause inheres in the abovementioned complexities.

## I. BACKGROUND

The Court is familiar with the facts of this case. To summarize, the Federal Service Labor-Management Relations Statute ("FSLMRS") authorizes the President to exempt from its coverage "*any* agency or subdivision thereof" if the President makes the determination that (A) "the agency . . . has as a primary function intelligence, counterintelligence, investigative, or national security work," and (B) the provisions of the statute "cannot be applied to that agency . . . in a manner consistent with national security requirements and considerations." 5 U.S.C. § 7103(b)(1) (emphasis added). Like most Presidents before him, on March 27, 2025, President Trump issued such an order. Specifically, in Executive Order 14,251, *Exclusions from Federal Labor-Management Relations Programs* ("the EO"), the President made the required determinations, thereby excluding from statutory coverage the identified agencies and agency subdivisions including, as relevant here, the DOJ, which includes the BOP.

On September 25, 2025, the Director of the BOP notified CPL-33 that "[a]s a result" of "the President's broad authority under 5 U.S.C § 7103(b)(l) to exempt agencies" including the DOJ—and "based on the EO [14,251]"—the BOP "no longer recognizes [CPL-33] as the exclusive representative for employees of the existing bargaining unit." ECF No. 28-5.

On November 13, 2025, Plaintiffs, CPL-33 and Local 1661, filed this action. *See* Complaint, ECF No. 1 ("Compl."). Plaintiffs advance two causes of action, both of which state they fall under the APA's "scope of review" for an agency decision. First, they argue that the BOP's ending of the CBA between the BOP and CPL-33 was arbitrary and capricious, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). Compl. ¶¶ 56–65. Second, Plaintiffs argue that the BOP decision was in violation of the APA, 5 U.S.C. § 706(2)(B), because it represented impermissible retaliation in violation of the First Amendment. Compl. ¶¶ 66–70. For

relief, Plaintiffs request that this Court enter a permanent injunction prohibiting Defendants from effectuating the termination of the CBA. *See* Compl., p. 17.

On December 22, 2025, Plaintiffs filed their preliminary injunction ("PI") motion. *See* ECF No. 28-1 ("PI Memo"). On February 13, 2026, Defendants filed a motion to dismiss. *See* ECF No. 40. On April 28, 2026, the Court denied Defendants' motion to dismiss and, on April 30, 2026, heard oral argument on Plaintiffs' PI motion. *See* ECF Nos. 54 and 56. The Court also set a deadline to produce the Certified Administrative Record ("CAR") by May 13, 2026, in accordance with its prior order and set a deadline for Plaintiffs to file a motion for supplemental discovery and briefing schedule for such a motion. *See* ECF No. 57. Defendants produced the CAR on May 13, 2026, *see* ECF No. 59, and filed an answer on July 8, 2026. *See* ECF No. 69.

On September 29, 2026, the Court granted Plaintiff's PI motion. *See* Order, ECF No. 72. In the PI Order, the Court found the BOP Director's termination letter and public message were contradictory and, "[a]lthough an agency may have multiple reasons for its action, it cannot offer an entirely pretextual explanation that is undermined by its own contradictory assertions made the same day." *Id.*, p. 26. As such, the Court concluded that "Plaintiffs are likely to succeed on their claim that Defendants' decision to terminate the CBA was arbitrary and capricious in violation of the APA." *Id.*, p. 27. The Court also found Plaintiffs demonstrated that they will suffer irreparable harm that could not otherwise be remedied in the absence of a preliminary injunction and that the balance of the equities and the public interest also weigh in favor of granting a preliminary injunction. *Id.*, pp. 27-30. In granting the preliminary injunction, the Court concluded with an order that "Defendants shall immediately reinstate the CBA, as well as any amendments, local supplemental agreements, and memoranda of understanding that were in place subsidiary to the CBA, for the remainder of the agreed-upon term provided in the CBA." *Id.*, p. 32. Earlier in its PI

Order, the Court also stated that "Defendants shall immediately reinstate the CBA for the remainder of the agreed-upon term provided in the CBA, and shall be governed by the terms of that agreement." *Id.*, p. 2.

On October 2, 2026, Defendants notified the Court of their intention to comply with the PI Order by filing a Notice of Compliance. *See* Notice, ECF No. 74. The Defendants made clear in the Notice "that they did not understand the Court's order to: (1) preclude the BOP from re-terminating the CBA in a fresh decision before the end of the CBA's term; or (2) mean that the Court intends to supervise every instance in which the BOP is alleged to have violated the CBA." *Id.*; *see also* Enforcement Order, pp. 2-3. Plaintiffs did not respond directly to the Notice of Compliance. On October 6, 2026, Plaintiffs filed a Motion for Contempt or Alternatively to Enforce. *See* Contempt Motion, ECF No. 75. Plaintiffs then supplemented the Motion on October 7, 2026, with a Notice informing the Court that, after filing the Motion, Plaintiffs' counsel learned that Defendants had approved some official time requests, approved a request for union space, and granted approval for union representation at a committee meeting. *See* ECF No. 78; *see also* Enforcement Order, p. 4.

On October 7, 2026, Director Marshall issued a memorandum to CPL33 President White (the "Rescission Memorandum"), rescinding the Message from the Director issued on September 25, 2025, as well as the September 25, 2025, memorandum terminating the CBA. *See* Supplemental Hemingway Dec., ECF No. 79-1 ¶12 and Ex. A to Hemingway Dec., ECF No. 79-2. Also on October 7, 2026, Director Marshall issued another memorandum to President White terminating the existing CBA. *See* Ex. B. to Supplemental Hemingway Dec., ECF No. 79-3 at 1.

The Court held oral argument on the Contempt or Enforcement Motion on October 13, 2026. *See* ECF No. 82. The Court then issued the Enforcement Order on October 16, 2026, and denied Plaintiffs' motion to the extent it sought to hold Defendants in contempt.

## II. STANDARD OF REVIEW

A preliminary injunction order must "state its terms specifically," and "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). District courts have the "sound discretion" to "clarif[y]" the scope of their injunctions so parties are not left "in the dark as to their duty toward the court." *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15 (1945) (stating that "we think courts would not be apt to withhold [such] clarification"); *see also Campus Stores of Mass., Inc. v. Follett Higher Educ. Grp., Inc.*, No. 05cv11116, 2005 WL 8176133, at *4 (D. Mass. Sept. 19, 2005) (granting a motion to clarify a preliminary injunction so that it "clearly requires" certain action); *Metcalf v. Yale Univ.*, No. 15cv1696 (VAB), 2019 WL 1767411, at *2 (D. Conn. Jan. 4, 2019) (A motion for clarification "resolve[s] alleged ambiguities" in an order.). Indeed, "[e]ntertaining such motions seems especially prudent if the parties must implement the ruling at issue at subsequent stages of the litigation." *United States v. All Assets Held at Bank Julius, Baer & Co.*, 315 F. Supp. 3d 90, 99 (D.D.C. 2018) (citation omitted).

"The decision whether to modify a preliminary injunction involves an exercise of the same discretion that a court employs in an initial decision to grant or deny a preliminary injunction." *Weight Watchers Intern., Inc. v. Luigino's, Inc.*, 423 F.3d 137, 141 (2d Cir. 2005) (citing *Sierra Club v. United States Army Corps of Engineers,* 732 F.2d 253, 256 (2d Cir.1984)). "A court abuses its discretion where it applies an incorrect legal standard or bases its ruling on clearly erroneous findings of fact." *Id.* (quotations omitted). In the Second Circuit, the burden on a party seeking to modify a preliminary injunction is unclear, *accord King Spider LLC v. Panda (Hong Kong) Tech.*

*Co.*, No. 24cv2668, 2025 WL 89123, at *3 (S.D.N.Y. Jan. 14, 2025), but some courts have found that "[a] party seeking relief bears the burden of establishing that there has been a change of circumstances that warrants relief." *S.E.C. v. Illarramendi*, No. 3:11cv78 (JBA), 2014 WL 545720, at *3 (D. Conn. Feb. 10, 2014) (citing *Horne v. Flores,* 557 U.S. 433, 447 (2009) ("[Under Fed. R. Civ. P. 60(b)(5)] the party seeking relief bears the burden of establishing that changed circumstances warrant relief.") (internal citations omitted)).

## III. ARGUMENT

### A. The Court should clarify that BOP may re-terminate the CBA for new reasons; in the alternative, it should modify its Order to permit such re-termination.

In its PI Order, the Court recognized that Plaintiffs were asking the Court to adjudicate only "BOP's decision to terminate the CBA." *See* Order, p. 2, ECF No. 72. Specifically, the Court appreciated that "[t]his case does not concern the validity of EO 14,251—that litigation is ongoing elsewhere throughout the nation." *Id.* Appropriately focused on the challenged action before it, the Court did not conclude that the BOP could not articulate a lawful basis upon which to terminate the CBA during the remainder of its term (*i.e.*, until May 28, 2029), and contemplated as much during the preliminary injunction hearing. *See* PI Mot. Hearing Tr., pp. 32, 67-68. Specifically, at the preliminary injunction motion hearing the Court stated:

> THE COURT: You brought up Rhode Island. What do you think would prevent the government from -- if the Court imposes the preliminary injunction here going back, reworking its reasoning and reterminating the CBA and then having a hearing of the sort that was before His Honor in Rhode Island, or Her Honor in Rhode Island, I should say?

PI Mot. Hearing Tr., pp. 32, 67-68.

At the Contempt and Enforcement Hearing, the Court also emphasized this point with Plaintiffs' counsel:

> THE COURT: . . . I recall when I was reading the transcripts of the oral argument and the colloquy I had with Attorney Jacobson, there was nothing in his response that led me to

> believe that re-termination required permission from the Court, as opposed to perhaps what I expect we'll hear from the defendants, which is actual compliance with the intent of Congress and the President and the executive order instead of particular anti-union issues as to this particular union on the part of the director which the Court found. . . . Let's assume that we all agree that the better practice is to seek a motion to dissolve or modify the preliminary injunction, and I'm not certain that's the Court's position. It's very likely not, but let's assume we agree that coming in and saying we think we've complied, here is our proposed basis for re-terminating, why isn't that -- well, what short of that, why isn't ECF 74, notice of compliance with the pretrial order, sufficient? It reads, in relevant part, that two bullet points, for lack of a better phrase from the Court, is, a, we don't read the Court's order to prevent us from re-terminating -- here we are.

Contempt Mot. Tr., pp. 27-29.

Indeed, an injunction prohibiting a future termination based on a different record and new agency explanation would be improper. The only agency action the Plaintiffs challenge in this suit is Defendants' September 25, 2025, termination of the CBA. *See* PI Motion, ECF No. 28-7 (Proposed Order that "the Court GRANTS Plaintiffs' Motion and STAYS and PRELIMINARY SETS ASIDE the September 25, 2025 termination of the CBA and PRELIMINARILY ENJOINS Defendants from effectuating the September 25, 2025 CBA termination.") (emphasis in original). Granting Plaintiffs relief from any speculative future agency actions would go beyond the relief Plaintiffs sought in their complaint and preliminary-injunction motion, and run counter to the rule that Plaintiffs "frame the issues" and "courts call balls and strikes; they don't get a turn at bat." *Clark v. Sweeney*, 607 U.S. 7, 9 (2025) (citations omitted). Article III also independently bars advisory relief concerning speculative future conduct. The Constitution limits federal courts' jurisdiction to "cases" and "controversies." U.S. Const., art. III, § 2. As the Supreme Court has repeatedly emphasized, that limitation requires "a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." *Carney v. Adams*, 592 U.S. 53, 58 (2020); *accord Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 397 (2024)

("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.").

In the instant case, the question and controversy before the Court is this: did Defendants' termination of the CBA on September 25, 2025, violate the APA. *See* Order, p. 2, ECF No. 72. Based on the record before the Court, the Court ruled that the answer is likely "yes." *Id.* at 2, 26-27. Termination of the CBA on a different basis would require adjudication based on a different record—one not before the Court. And a court's review of an agency's decision is generally limited "to the administrative record compiled by that agency *when it made the decision*." *See Nat'l Audubon Soc. v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997) (emphasis added); *see also Kakar v. U.S. Citizenship & Immigr. Servs.*, 29 F.4th 129, 132 (2d Cir. 2022) (Courts reviewing agency actions under the APA are typically "limited to examining the administrative record to determine whether the agency decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.") (quoting *Nat. Res. Def. Council, Inc. v. Muszynski*, 268 F.3d 91, 97 (2d Cir. 2001)).

The October 2026 recission of the prior termination and messaging, and attempted re-termination decision, addresses the Court's prior concerns with the September 2025 termination, and specifically explains that to the extent the Director's September 2025 message (or any other communication) stated or implied that the termination of the CBA was not for the purposes related to Executive Order 14,252, such statements or implications were rescinded. *See* Supplemental Hemingway Dec., ECF No. 79-1 ¶12 and Ex. A to Hemingway Dec., ECF No. 79-2. The October 2026 decision and attempted re-termination also includes a thorough analysis of the impact of collective bargaining on BOP's ability to execute its national security mission. *See* Supplemental Hemingway Dec., ECF No. 79-1 ¶12 and Ex. B to Hemingway Dec., ECF No. 79-3. The proposed

re-termination also reasoned that because the FSLMRS no longer applies to the BOP pursuant to Executive Order 14,251, the BOP has no ongoing statutory obligation to bargain, to recognize AFGE or CPL-33 as exclusive representatives, or to remain bound by CBAs previously negotiated under the FSLMRS. *Id.* Based on the record and reasoning associated with the BOP Director's new determination, this Court's prior preliminary conclusions regarding the September 2025 termination would not apply to the agency's newly explained decision in 2026 in its proposed re-termination. To determine likelihood of success on the merits of any renewed claim challenging the BOP Director's new determination, this Court would need to evaluate the rationale presented in the new document and its supporting administrative record, much of which addresses the prior concerns noted in the injunction order.

It is also axiomatic that equitable relief must be narrowly tailored to remedy the harm alleged. *See Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025) ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.") (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (emphasis omitted); *see also Soc'y for Good Will to Retarded Child., Inc. v. Cuomo,* 737 F.2d 1239, 1251 (2d Cir. 1984) ("Injunctive relief should be narrowly tailored to fit the specific legal violations adjudged."). As discussed *supra*, the only action the Plaintiffs' complaint challenges, and that Plaintiffs requested a preliminary-injunction setting aside, is Defendants' September 25, 2025, termination of the CBA, and therefore the relief must be tailored to that particular agency action. Indeed, the APA remedy of vacatur contemplates that the BOP "can 'deal with the problem afresh' by taking *new* agency action. An agency taking

this route is not limited to its prior reasons but must comply with the procedural requirements for new agency action.'" *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 21 (2020) (citation omitted).[1]

At the Enforcement hearing, the Court sought Plaintiffs' position about their interpretation of the Court's PI Order:

> THE COURT: . . . Is it the plaintiffs' position that the inclusion by this Court of the language that the CBA be reinstated for the remainder of the agreed-upon term is the operative handful of words here?
> MS. EISENBERG: Yes, Your Honor.
> THE COURT: And as it relates to the ability of the defendants to re-terminate, what legal effect do those five words have on the Bureau of Prisons' ability to reinstate -- I'm sorry -- to re-terminate the CBA?
> MS. EISENBERG: So the Bureau of Prisons can -- may be able to re-terminate the CBA depending on the facts and the circumstances if they want to do so. Given the language in the preliminary injunction, they must file a motion to dissolve or to modify that preliminary injunction on the basis of a lawful re-termination. And, you know, we can fully brief that and argue about the merits of that re-termination through that procedural mechanism.
> THE COURT: Otherwise, the CBA remains in place and the Bureau of Prisons must adhere to its terms through that May 2029?
> MS. EISENBERG: Yes, Your Honor.

[1] It also bears noting that Defendants respectfully disagree with the Court's PI Order and maintain, as they have throughout this litigation, that in light of the President's exclusion of the Bureau of Prisons from the FSLMRS, the CBA became inoperable and the BOP Director's termination was therefore designed to implement a binding legal directive that left BOP with some discretion in the timing of CBA termination but without the power to second-guess the President's underlying determination that collective bargaining should not continue at BOP. *See* ECF No. 41, pp. 27, 34 (Omnibus Mot. and Resp. to PI Motion) ("Given the President's determinations . . . that the DOJ should not be subject to the requirements of the FSLMRS. . . . [T]he EO made all the necessary considerations and determinations and left no decision-making flexibility to the BOP."); ECF No. 51, p. 5, 7-8 (Reply Br.) ("[I]f an agency is exempted from the FSLMRS and there is no exclusive representation by a union there can be no CBA—it is abrogated. . . . The President's determination left no room for BOP to make an independent call on ending the CBA, and Plaintiffs' arguments mischaracterize . . . the independent follow-on effect of removal of FSLMRS coverage."); PI Mot. Hearing Tr. pp. 35-43, 58 (["P]laintiffs' position conflates substantive policy discretion which belonged to the President with discretion over agency timing and implementation of the President's binding order."). Even though it is undisputed in this case that BOP employees are excluded from the Federal Service Labor-Management Relations Statute (FSLMRS) by virtue of Executive Order 14,251, the Court's PI order effectively forces the BOP to continue to cover those employees under the FSLMRS under a zombie-like agreement that is otherwise inoperable and overrides the President's determination that the FSLMRS cannot be applied BOP employees in a manner consistent with national security requirements.

Enforcement Mot. Tr., pp. 25-26.[2]

Defendants did not read the Court's Order to preclude Defendants from engaging in any future termination of the CBA through its scheduled expiration on May 28, 2029, and effectuating the presently voided October 7, 2026, re-termination as soon as possible. Such relief would be

---

[2] As noted in the Joint Status Report, ECF No. 80, pp. 7-8, rather than filing a new preliminary injunction motion, Plaintiffs suggested for the first time to the Court in the status report that the BOP's re-termination violates the Court's preliminary injunction order and Defendants could have filed a motion seeking the dissolution or modification of the preliminary injunction and point to *Am. Fed'n of Gov't Emps., AFL-CIO v. Noem*, No. 2:25cv00451, 2026 WL 113599, at *3 (W.D. Wash. Jan. 15, 2026) as an example. But *Am. Fed'n of Gov't Emps., AFL-CIO* dealt with an entirely different preliminary injunction following that Court's determination Plaintiffs were likely to succeed on violations of the APA *and the First and Fifth Amendments to the Constitution:*

> Defendants and all their respective officers, agents, servants, employees, and attorneys are hereby enjoined from the following:
>
> 1. Enforcing, implementing, or otherwise giving effect to the Noem Determination's purported recission of the 2024 CBA between TSA and AFGE and/or its determination that the 2024 CBA is no longer applicable or binding;
> 2. Denying Plaintiffs, their members, and all bargaining unit TSOs any and all rights and/or working conditions guaranteed in the 2024 CBA; and
> 3. Enforcing or implementing the Noem Determination's termination of functions, processes, and obligations arising out of the 2024 CBA, including but not limited to the termination of pending grievances and arbitrations brought pursuant to the 2024 CBA.
>
> Additionally, the Court ORDERS Defendants to immediately notify bargaining unit TSOs that pursuant to this Order, the 2024 CBA remains applicable and binding, such that all rights contained in the CBA are restored to the pre-Noem Determination status quo, including but not limited to the right of AFGE to serve as exclusive representative, the right of TSOs to request representation in connection with an investigation, the right of TSOs to pay their membership dues through payroll deduction (such that payroll deduction of dues will be restarted for TSOs who have previously requested it), the right to use official time as set forth in the CBA, contractual protections regarding discipline and adverse actions, and the right to use the contractual grievance and arbitration process. Furthermore, Defendants must notify bargaining unit TSOs that pursuant to this order, currently pending grievances and arbitrations submitted pursuant to the 2024 CBA will continue to be processed.

No. 2:25-CV-00451, at ECF No. 39, pp. 40-41 (W.D. Wash. Jun. 2, 2025).

inappropriate because it would provide plaintiffs with greater relief than is necessary to make them whole. *See CASA, Inc.*, 606 U.S. at 852 (2025); *see also Kane v. De Blasio,* 19 F.4th 152, 173 (2d Cir. 2021) ("[A]s a general rule, injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.") (quotations omitted; cleaned up); *Texas v. United States*, 126 F.4th 392, 420 (5th Cir. 2025) ("[E]quitable remedies such as injunctions should not provide more relief than necessary to give the prevailing party the relief to which it is entitled.") (quotations omitted; cleaned up). However, in light of the Court's Enforcement Order, Defendants seek clarification that the new position Plaintiffs have taken following their PI Motion construing the Court's order as one forbidding Defendants from engaging in any future termination of the CBA through its scheduled expiration on May 28, 2029, was not what the Court intended.

However, if the Court finds that Defendants' reading is incompatible with the language of the Court's preliminary injunction, Defendants request a modification of the preliminary injunction. In modifying a preliminary injunction, the Court can exercise the same discretion that it employed when granting the preliminary injunction. *See Weight Watchers Intern., Inc.*, 423 F.3d at 141. For all the reasons outlined above, it would be a legal error to leave the agency without means to take a new action aimed at remedying the explanation the court found inconsistent and inadequate in the first instance. *See Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 999 (2d Cir. 1997) (A "court abuses its discretion only if it applies an incorrect legal standard, bases the preliminary injunction on a clearly erroneous finding of fact, or issues an injunction that contains an error in its form or substance.") (citation omitted). Modifying the preliminary injunction to correct this error would therefore be appropriate. *See id.*

**B. Director's Marshall's October 7, 2026, recission memorandum and re-termination is meaningfully different from the September 25, 2025, termination—a significant change in circumstances—and renders the Court's reasoning under the APA in the PI Order inapplicable.**

Alternatively, based on the record and reasoning associated with the BOP Director's new determination and recission of the September 2025 determination, this Court's prior preliminary conclusions regarding the September 2025 termination would not apply to the agency's newly-explained decision in 2026 in its proposed re-termination. This constitutes a significant change in circumstances underlying the preliminary injunction and warrants its dissolution.

Specifically, on October 7, 2026, Director Marshall issued a memorandum to CPL-33 President White, rescinding the Message from the Director issued on September 25, 2025, as well as the September 25, 2025, memorandum terminating the CBA. *See* Supplemental Hemingway Dec., ECF No. 79-1 ¶12 and Ex. A to Hemingway Dec., ECF No. 79-2. Also on October 7, 2026, Director Marshall issued another memorandum to President White attempting to terminate the existing CBA on the basis of a new agency explanation. *See* Ex. B. to Supplemental Hemingway Dec., ECF No. 79-3 at 1.

In the Court's PI Order, it found the BOP Director's original termination letter and public message were contradictory and, "[a]lthough an agency may have multiple reasons for its action, it cannot offer an entirely pretextual explanation that is undermined by its own contradictory assertions made the same day." *Id*., p. 26. As such, the Court concluded that "Plaintiffs are likely to succeed on their claim that Defendants' decision to terminate the CBA was arbitrary and capricious in violation of the APA." *Id*., p. 27.

As highlighted above, the October 2026 recission of the prior termination and messaging and attempted re-termination decision addresses the Court's prior concerns with the September 2025 termination and specifically explains that to the extent the Director's September 2025

message (or any other communication) stated or implied that the termination of the CBA was not for the purposes related to Executive Order 14,251, such statements or implications were rescinded. *See* Supplemental Hemingway Dec., ECF No. 79-1 ¶12 and Ex. A to Hemingway Dec., ECF No. 79-2. The October 2026 decision on proposed re-termination also includes a thorough analysis of the impact of collective bargaining on BOP's ability to execute its national security mission. *See* Supplemental Hemingway Dec., ECF No. 79-1 ¶12 and Ex. B to Hemingway Dec., ECF No. 79-3. The proposed re-termination also reasoned that because the FSLMRS no longer applies to the BOP pursuant to Executive Order 14,251, the BOP has no ongoing statutory obligation to bargain, to recognize AFGE or CPL-33 as exclusive representatives, or to remain bound by CBAs previously negotiated under the FSLMRS. *Id.* Based on the record and reasoning associated with the BOP Director's new determination, this Court's prior preliminary conclusions regarding the September 2025 termination would not apply to the agency's newly-explained decision in 2026 in its proposed re-termination. To determine likelihood of success on the merits of any renewed claim challenging the BOP Director's new determination, this Court would need to evaluate the rationale presented in the new document and its supporting administrative record, much of which addresses the prior concerns noted in the injunction order.

Accordingly, the preliminary injunction should not continue on the basis of this Court's past findings about the September 2025 termination, as the proposed re-termination is based on a fresh and independent analysis informed by an expanded factual record. In short, the BOP Director's October 2026 determination proposing re-termination is a separate and distinct agency decision that stands apart from the prior September 2025 determination. The Court's September 2026 preliminary injunction's reasoning does not account for the additional considerations underlying the BOP Director's new determination, and continuing to prospectively maintain a

preliminary injunction based on the prior determination “is no longer equitable.” Fed. R. Civ. P. 60(b)(5). The Court should therefore dissolve its September 2026 PI Order and permit the BOP to effectuate its since-voided October 2026 re-termination immediately. To the extent a new PI motion may be filed regarding the October 2026 re-termination, the Court should take up any such motion in due course.

## IV. CONCLUSION

Defendants did not understand this Court’s injunction to preclude the agency from making a fresh decision to terminate the CBA before the end of the agreed-upon term. However, in light of the Court’s Enforcement Order, Defendants seek clarification that the new position Plaintiffs have taken following their PI Motion construing the Court’s order as one forbidding Defendants from engaging in any future termination of the CBA through its scheduled expiration on May 28, 2029, was not what the Court intended. Alternatively, this Court should modify or dissolve the preliminary injunction, as the October 7, 2026, recission of the September 2025 termination of the CBA and subsequent attempted re-termination decision on October 7, 2026, constitutes a significant change in circumstances underlying the preliminary injunction, and Plaintiffs would not presently be able to demonstrate likely success on the merits of the claim the Court granted relief on with the PI Order.

Respectfully submitted,

THE FEDERAL BUEARU OF PRISONS;
and WILLIAM K. MARSHALL III, in his
official capacity as Director of the BOP

By their attorneys

DAVID X. SULLIVAN

United States Attorney

/s/

J. Brian Meskill (ct29611)
Assistant United States Attorney
450 Main Street, Rm. 328
Hartford, CT 06103
Tel.: 860-947-1101
Fax: (860) 760-7979
Email: Brian.Meskill@usdoj.gov

BRETT A. SHUMATE
Assistant Attorney General

Tyler J. Becker (VA Bar No. 97636)
Counsel to the Assistant Attorney General
Office Of The Assistant Attorney General,
Civil Division 950 Pennsylvania Ave Nw
Rm. 3632
Washington, DC 20530
USA
202-514-4052
Email:Tyler.Becker@usdoj.Gov

Jeremy Mauritzen (CA Bar 354615) Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 598-7315
Email: Jeremy.Mauritzen@usdoj.gov