**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| NATIONAL COUNCIL OF PRISON LOCALS, AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, et al., *Plaintiffs*; v. FEDERAL BUREAU OF PRISONS, et al., *Defendants*. | No. 3:25-CV-01907-VDO |

**SECOND SUPPLEMENTAL DECLARATION OF JONATHAN HEMINGWAY**

I, Jonathan Hemingway, declare, pursuant to 28 U.S.C. § 1746, as follows:

1. I am a Senior Deputy Assistant Director for the Bureau of Prisons ("BOP" or "Bureau") Human Resource Management Division ("HRMD"). The BOP is a component of the United States Department of Justice ("DOJ"). I have served in this role since May 2023. I also served as the Acting Assistant Director from November 2025 until May 2026. I have been employed by the BOP continuously since January 2008. In my current role I am responsible for overseeing the development, implementation, and administration of Human Resource policy and programs. I oversee various Human Resource-related areas and develop initiatives pertaining to, and including, career development, recruiting, employee performance and evaluations, employee upward mobility, employee pay issues, position classification, staffing, employee benefits programs, research, and employee leave issues.

2. I am familiar with the above-captioned case. I previously submitted declarations in this case on February 12, 2026, and October 8, 2026. This declaration supplements those declarations and incorporates their provisions and attachments by reference.

3. Based on personal knowledge and information provided to me in the course of my official duties, I provide this declaration in support of Defendants' response to the Court's October 21, 2026, Order (Dkt. No. 88), which instructed Defendants to "file a notice of compliance that outlines Defendants' steps taken to comply with the collective bargaining

agreement ("CBA") since the Court's October 16, 2026, Order and further outlines Defendants' intended next steps to comply with the CBA."

## BACKGROUND

4. Bureau of Prisons staff entitled to wage and overtime pay under the Fair Labor Standards Act ("FLSA") had been represented by the Council of Prison Locals-33 ("CPL-33" or "union"), which had been certified as the exclusive representative of all such employees of the BOP. The BOP and CPL-33 engaged in bargaining and negotiated a Collective Bargaining Agreement ("Master Agreement" or "CBA").

5. For organizational purposes, CPL-33 is a sub-member organization of the American Federation of Government Employees ("AFGE"). AFGE also established local chapters representing staff at each BOP institution or location. Those local chapters, however, were not independently certified or recognized by AFGE or BOP. In essence, local union chapters served as agents of CPL-33. Under the auspices of CPL-33, each local union president engaged in negotiations with management at that location and reported up to the CPL-33's national e-board members. This often led to disparate implementation of the Master Agreement across the Bureau.

6. The most recent version of the Master Agreement was signed by the then-Director of the Bureau of Prisons and the then-CPL-33 President on July 21, 2014, and was extended (with amendments) up to and through May 28, 2029.

7. On September 25, 2025, the Director of the Bureau of Prisons, William K. Marshall III, terminated the Master Agreement with CPL-33. This termination was documented in a memorandum from Director Marshall to CPL-33 President Brandy Moore White on September 25, 2025. As a result of the termination, CPL-33 was no longer recognized as the exclusive representative of staff in the Bureau of Prisons, and all negotiated agreements between BOP and CPL-33 (or its local subordinate unions) were terminated and no longer in effect.

8. I am aware that on September 29, 2026, the Court issued a Preliminary Injunction in this matter related to the Director's decision to terminate the Master Agreement. Specifically, the injunction ordered the Bureau to, "immediately reinstate the CBA, as well as any amendments, local supplemental agreements, and memoranda of understanding that were

in place subsidiary to the CBA, for the remainder of the agreed-upon term provided in the CBA." (Dkt. No. 72).

9. On October 7, 2026, the Director issued a recission of the September 25, 2025, termination of the Master Agreement, along with a new termination of the Master Agreement. Both documents were sent to Union President Brandy Moore White on October 7, 2027.

10. Between the issuance of the September 29, 2026, Preliminary Injunction, and the issuance of the October 7, 2026, termination, the Bureau took immediate and substantial steps on a nationwide basis toward compliance with the Preliminary Injunction. These actions (and examples thereof) were detailed in my October 8, 2026, Supplemental Declaration, which is fully incorporated into this Second Supplemental Declaration.

11. I am aware that on October 6, 2026, the Plaintiffs filed a Motion for Contempt or in the Alternative to Enforce (Dkt. No. 75).

12. I am aware that on October 8, 2026, Defendants filed an Opposition to Plaintiff's Motion for Contempt or in the Alternative to Enforce (Dkt. No. 79), to which my Supplemental Declaration dated October 8, 2026, was attached.

13. I am aware that on October 16, 2026, the Court denied Plaintiffs' Motion for Contempt. In that same Order, the Court granted the Motion to Enforce in part, finding the Bureau's October 7, 2026, re-termination of the CBA is void (Dkt. No. 84). I am further aware the Court ruled the CBA "shall remain in effect until either the expiration of the agreement on May 28, 2029, or until the Court grants a properly filed motion by Defendants to dissolve or clarify the PI order to permit re-termination." (Dkt. No. 84).

14. I am aware that on October 20, 2026, pursuant to the Court's October 16, 2026, Order, Defendants filed an Emergency Motion for Clarification or, Alternatively, for Modification or Dissolution of Preliminary Injunction (Dkt. No. 85).

15. I am aware that on October 21, 2026, the Court issued two Orders. The first Order granted Defendants' request to consider the motion to clarify on an emergent basis but denied consideration of the motion to modify or dissolve the Preliminary Injunction on an emergent basis (Dkt. No. 87). Second, the Court ordered Defendants to, no later than October 28, 2026, "file a notice of compliance that outlines Defendants' steps taken to comply with the collective bargaining agreement ("CBA") since the Court's October 16,

2026, Order and further outlines Defendants' intended next steps to comply with the CBA." (Dkt. No. 88).

**COMPLIANCE WITH THE COURT'S OCTOBER 16, 2026, ORDER**

16. On October 16, 2026, shortly after receiving the Order voiding the re-termination of the Master Agreement, a meeting was held with representatives from the Bureau's Human Resource Management Division, the Office of General Counsel, each of the six Regional Directors, and other BOP senior managers. At this meeting, it was explained the Court voided the Bureau's re-termination of the CBA. Regional Directors were reminded to continue to convey the same instructions they communicated to all Wardens following issuance of the September 29, 2026, Preliminary Injunction Order. This included, for example:

a. Granting reasonable requests for official time,

b. Providing access to office space as necessary and appropriate,

c. Allowing union officials to serve as representatives at disciplinary proceedings and official meetings, and

d. Scheduling meetings with union officials.

17. It was further recognized at that meeting that some requests from Union officials, while reasonable, would take more time to implement or resolve, and reasonable efforts should be made to work alongside union officials to identify workable solutions.

18. **Official Time.** Following issuance of the October 16, 2026, Order, Wardens at all BOP institutions were again reminded by their respective Regional Directors to consider all requests for official time on a case-by-case basis pursuant to Article 11 of the Master Agreement, and to authorize reasonable official time requests. In short order, management officials across the country received *hundreds* of requests for official time pursuant to Article 11. Local management officials immediately began reviewing these requests on a case-by-case basis and reasonable requests for official time were granted. Since that time, management officials at institutions across the country continue to receive dozens of requests daily and have reviewed and granted reasonable requests for official time submitted by union officials pursuant to the provisions of the Master Agreement and local supplemental agreements. Management officials at institutions

across the country will continue to engage with local union officials to authorize reasonable requests for official time consistent with Article 11 of the Master Agreement and local supplemental agreements in existence prior to September 25, 2025.

19. **Policy.** As indicated in my October 8, 2026, Supplemental Declaration, following issuance of the September 29, 2026, Preliminary Injunction, the Bureau ceased utilizing the streamlined policy development process which it implemented in December 2025. Under that process, over 130 new, updated, or cancelled policies were issued in a nine-month period. No new or updated policies or procedure memoranda have been issued since September 29, 2026, without engaging the union.

20. Bureau management officials expect to engage with the union, pursuant to applicable provisions of the Master Agreement, regarding any new or updated policies and procedural memoranda issued after October 16, 2026. Notably, on October 19, 2026, following issuance of the Court's October 16, 2026, Order, the Bureau sent National Union President Brandy Moore White a Memorandum related to the "Authorization for Use of Expandable Batons at Medium Security Institutions and Federal Medical Centers." Ms. Moore White responded with no objections on October 21, 2026, and the memorandum was issued shortly thereafter.

21. Other policies implemented since the September 25, 2025, termination are being re-evaluated to identify potential conflicts with the Master Agreement. Appropriate modifications will be made and/or forwarded to the Union for negotiation in order to ensure compliance with the Master Agreement.

22. I am aware that on October 21, 2026, the union sent a memo requesting to re-engage with the policy negotiation process pursuant to Article 3 of the Master Agreement. The Bureau is currently reviewing this request, in accordance with the Master Agreement, to determine what action is required and will respond to the union's request to re-engage policy negotiations as appropriate. It should be noted that since the September 29, 2026, Preliminary Injunction, no new policies have been drafted or provided to the union for review. To the extent the Bureau proposes to publish new policies, they will be provided to the Union in accordance with Article 3 of the Master Agreement for negotiation.

23. **Office Space.** Post-termination of the Master Agreement in September 2025, the BOP reclaimed thousands of square feet of office space, as well as significant amounts of

information technology (IT) equipment and other resources which had been provided to local unions within the BOP and their members free of charge. The space and resources formerly used by union representatives and members has already been repurposed by BOP institutions and much of it is now used for mission-related work. Following issuance of the Preliminary Injunction, and specifically since October 16, 2026, however, institutions have begun identifying alternate space to be used by the union. This process takes time to identify space at each of the approximately 120 BOP institutions, many of which have extremely limited space available, and ensure it is habitable for use by the union. Nonetheless, since issuance of the October 16, 2026, Order:

a. Wardens at institutions across the country have worked closely with local union officials to identify appropriate spaces to be utilized by local union officials.

b. In institutions in which the previously utilized office space is no longer available, Wardens have worked with local union officials to ensure a private space was available for union officials to meet with their members as needed on an ad hoc basis.

c. In some institutions, local agreements refer to the use of specific space by the union which is no longer available. In such cases, although the original agreement cannot be immediately re-implemented, local management officials have begun working with the union to identify comparable space for use by the union.

d. In many institutions, such as FMC Lexington and USP Lee, management officials have undertaken a time-consuming task of rearranging and repurposing limited space within the institution in order to identify an appropriate space for use by the union.

24. Such efforts at these, and many other institutions, remain ongoing to ensure local union officials have sufficient space on an ongoing basis to conduct union business.

25. Prior to the September 25, 2025, termination of the Master Agreement, local union officials had been provided with designated parking spots in the employee parking lot at some institutions across the country. Following issuance of the October 16, 2026, Order, local management officials, upon request, have made arrangements to return these parking spots for use by union officials pursuant to local agreements.

26. **Union Representation.** Following issuance of the October 16, 2026, Order, Wardens have been reminded to allow union officials to provide representation to bargaining unit employees during formal meetings, interviews pursuant to an investigation, and during

the disciplinary process. There is no indication there have been any material concerns in this area. Management and union officials across the Bureau continue to work together to ensure union members are provided with representation as required by the Master Agreement.

27. Notably, the Assistant Director for the Human Resources Management Division included such requirements in her presentation to the Executive Staff during a meeting this week. In that presentation, she ensured Regional Directors and Executive Staff members remained aware of the importance of complying with the Preliminary Injunction and re-implementing the requirements of the Master Agreement.

28. **Meetings and LMR.** Following issuance of the October 16, 2026, Order, local and regional union officials at numerous institutions have requested meetings with local institution management, to include the resumption of labor-management relations (LMR) meetings. Local management officials have begun scheduling and holding such requested meetings, in order to ensure appropriate engagement between management and the union. For example:

a. At FCC Coleman, LMR meetings between management and union officials have been scheduled to commence on November 18, 2026.

b. At FCI Bennettsville, the newly-assigned Warden held an introductory meeting with the union president following the October 16, 2026, order.

c. At FCI Jesup, the Warden resumed regular weekly meetings with the union president and is in the process of working with local union officials to identify a mutually-agreeable time to resume LMR meetings in the coming weeks.

d. At FCI Atlanta, local management officials met with union officials on October 20, 2026.

29. The national union e-board has also requested to resume National LMR Quarterly Meetings. The Bureau is in the process of working with the union to begin scheduling such meetings at a mutually agreeable time and has tentatively scheduled December 9, 2026, and December 10, 2026, for the next Quarterly Meeting.

30. **Roster Program Access.** Each of the Bureau's approximately 120 institutions control access to the roster program locally. I am aware that following issuance of the October 16, 2026, Order, multiple local union officials requested roster access from their assigned

institutions. Consistent with the provisions of the Correctional Services Procedures Manual, union presidents (or their designees) at each location have been granted access to the roster program upon request

31. **Staff Accountability.** Following issuance of the October 16, 2026, Order, the Bureau took numerous actions to re-implement the terms and provisions of the Master Agreement relating to misconduct investigations and adjudication, including:

   a. The Bureau ceased implementation of the "irrefutable evidence" standard for misconduct and reverted to the procedures in Article 30 of the Master Agreement.

   b. The Bureau ceased implementation of the voluntary misconduct diversion program, which has received high praise from staff, and reverted to the procedures in Article 30 of the Master Agreement.

   c. The Bureau ceased implementation of updated timeframes in which to provide a response to disciplinary and adverse actions, and allowed employees issued new proposed discipline and new proposed adverse actions to respond in accordance with the timeframes established in Article 30(j) of the Master Agreement.

   d. As indicated above, following issuance of the October 16, 2026, Order, local management officials were again reminded to allow reasonable official time for union representation during misconduct investigations and during the disciplinary process, in accordance with the Master Agreement.

32. **Schedules.** Scheduling for most employees is done on a quarterly basis. The roster for the current quarter (which began on or around October 1, 2026) was approved weeks ahead of the start of the new quarter, and staff had already been notified of their assigned posts, shifts, and schedules at each location. There is no way to feasibly alter these schedules or engage with the union to implement new schedules or rosters once the quarterly roster has been implemented. Wardens at each institution have been instructed to include the union in scheduling pursuant to Article 18 of the Master Agreement beginning with the next quarter (which begins on or around January 1, 2026).[1] The Bureau will also discontinue its reliance on 12-hour shifts for certain custody posts and plans to revert back to the schedules, posts, and shift times in place prior to September

---

[1] Each institution manages scheduling locally. As such, the exact date of the beginning of the quarter may vary slightly between institutions.

25, 2025, beginning with the next quarter, until appropriate negotiations can be conducted at each location.

33. Similar concerns arise related to Compressed Work Schedules (CWS). On June 22, 2026, the Bureau issued a new Alternative Work Schedules policy, Program Statement 3305.01. Since that time, many CWS have been terminated, implemented, or revised, without engaging the union. Many provisions of that policy now appear to conflict with the procedures for implementation of CWS pursuant to Article 18 of the Master Agreement. Similarly, some of the newly implemented schedule changes now appear to conflict with pre-existing local agreements. As such, these schedules must be reviewed and adjusted, in light of (at times) decades-old local agreements. Local management officials are engaging, and will continue to engage, with local union officials to negotiate an appropriate resolution pursuant to Article 18 of the Master Agreement. This process, however, can take a considerable amount of time to implement due to the many changes which have been made throughout the Bureau of Prisons nationwide.

34. **Union Dues Payments.** In my October 8, 2026, Supplemental Declaration, I discussed the conflict between AFGE's e-dues system and the direct payroll deduction system which had previously been in effect. This creates an extremely complicated and conflicting dues collection structure. The Bureau is cognizant of these concerns and is attempting to comply with the Preliminary Injunction in a manner which does not result in any employees paying double dues through both the e-dues system and direct payroll deduction. Although no action has been taken at this time, the Bureau expects to engage with national union leadership in the immediate future to develop a mutually agreeable solution.

35. **Other Actions.** Local management officials continue to review local agreements on an ongoing basis and implement them wherever practicable. In many instances, however, the re-implementation of these agreements are not practicable because they are outdated, ineffective, or conflict with other Bureau-wide changes. In many instances, these local agreements may conflict with nationwide changes implemented to improve staff health and safety within the institutions. In such cases, local management officials have engaged (and will continue to engage) with union officials to find an appropriate solution.

36. At some institutions, such as FCC Yazoo City, there is no clearly established union

leadership. At these locations, management officials have received multiple, and at times, conflicting requests from union officials. Although local management officials have attempted to engage with the union, these efforts have been delayed due to such confusion within the union itself.

37. Following the September 25, 2025, termination of the collective bargaining agreement, the Bureau dismantled its labor relations apparatus. The Bureau is currently in the process of re-allocating resources for the purpose of responding to grievances & information requests and providing guidance to local management officials related to interpretation of the Master Agreement. Doing so – coupled with the Bureau's ongoing reorganization of its Human Resource Management Division – takes significant time, however, and requires re-allocation of resources from other mission-critical areas

38. In short, since October 16, 2026, the Bureau has taken substantial steps to implement the Court's October 16, 2026, Order. Management officials at all levels continue to engage with the union on a daily basis to ensure compliance with the Order and re-implement the Master Agreement.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 28, 2026.

Jonathan Hemingway
Senior Deputy Assistant Director, HRMD