**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

NATIONAL COUNCIL OF PRISON LOCALS, AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, and

CPL-33, AFGE Local 1661, AFL-CIO,

*Plaintiffs*,

v.

FEDERAL BUREAU OF PRISONS, and

WILLIAM K. MARSHALL, III, *in his official capacity as Director of Federal Bureau of Prisons*,

*Defendants*.

Case No. 3:25-cv-01907-VDO

# [PROPOSED] SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

1. Pursuant to Federal Rule of Civil Procedure 15(d), this supplemental complaint adds allegations to the complaint regarding events that occurred following the filing of Plaintiffs' complaint, including with respect to the decision of the Federal Bureau of Prisons to re-terminate its collective bargaining agreement (CBA) with the National Council of Prison Locals, AFGE (CPL-33).[1]

2. Defendants attempted to re-terminate the CBA eight days after this Court ordered the CBA reinstated through its agreed-upon expiration in May 2029. The new decision invokes national security and agency operations, but suffers from the same defects as the September 2025 termination, including that the stated reasons for the decision are pre-textual. The Director's true reasons for deciding to re-terminate are the same ones he proudly proclaimed on the BOP website in issuing the first termination, and the Director's purported "rescinding" of that evidence of pretext does not erase it from history. Moreover, BOP still does not reasonably explain why the entire agreement must be terminated immediately, why less disruptive alternatives would not suffice, or how the agency accounted for the substantial reliance interests of the Union and represented employees. BOP's decision to re-terminate CPL-33's CBA is also a continuation of Defendants' unlawful retaliation against CPL-33 for disfavored union advocacy and association.

[1] The paragraphs of this supplemental complaint are additive to, not substitutes for, the paragraphs of the original complaint.

## LEGAL AND FACTUAL BACKGROUND

### A. OPM Issues Termination Template Making Clear Termination Is Discretionary

3. On February 12, 2026, OPM issued a guidance document and "Template" for agencies to use in terminating CBAs. Template: Termination of Collective Bargaining Agreements for Agencies subject to Executive Orders 14251 and 14343 ("OPM Termination Template"), https://perma.cc/3297-QDLR.

4. That template recognizes that CBA terminations are discretionary and should comply with the APA's requirements. The template indicates that agencies should specify that, after the issuance of the Executive Order, the agency "considered whether to terminate any CBA, in whole or part, as it pertains to those bargaining unit employees who fall within the [EO's] scope." *Id.* at 2. Agencies should further write that they "reviewed the parties' CBA to determine [whether] continuing to adhere to its provisions would be consistent with the President's national security determination." *Id.* And agencies should say that they "also considered the interests of bargaining unit employees and the [insert name of certified representative] in continuing to adhere to the parties' CBA." *Id.* at 3.

5. The Termination Template remains posted on OPM's website as of October 28, 2026.

### B. The Court Preliminarily Sets Aside the September 2025 Termination and Orders Restoration of the CBA

6. On September 29, 2026, this Court granted Plaintiffs' motion for a preliminary injunction and preliminary relief under 5 U.S.C. § 705. The Court found that Plaintiffs had demonstrated a likelihood of success on their claim that BOP's September 25, 2025 termination of the CBA violated the Administrative Procedure Act, that the termination caused irreparable

harm to Plaintiffs and the thousands of employees they represent, and that the remaining equitable factors favored preliminary relief.

7. The Court concluded that BOP's asserted reason for terminating the CBA was likely pretextual. In particular, the Court contrasted BOP's reliance on Executive Order 14251 with Director Marshall's contemporaneous public statements explaining that the termination was because CPL-33 was not the kind of union he supported and purportedly had become an obstacle to changes that the Director sought to make at BOP.

8. The Court preliminarily set aside and enjoined the September 25, 2025 termination. It further ordered Defendants to "immediately reinstate the CBA for the remainder of the agreed-upon term provided in the CBA" and to be governed by that agreement's terms. The Court further directed Defendants to reinstate all amendments, local supplemental agreements, and memoranda of understanding subsidiary to the CBA. The agreed-upon CBA term extends through May 28, 2029.

### C. Defendants Purport to Reinstate the CBA, Then Issue a New Termination and Rescind the Prior Explanations

9. Three days after issuance of the preliminary injunction, Defendants represented that they were complying with the Court's order.

10. On October 2, 2026, Defendants filed a "Notice of Compliance" that detailed no steps that BOP was taking to comply with the injunction. Defendants stated that BOP interpreted the injunction to allow the agency to re-terminate the CBA.

11. On October 6, 2026, following their attempts to ascertain Defendants' compliance, Plaintiffs moved for contempt or, alternatively, to enforce the preliminary injunction. On October 7, the Court directed the Government to provide detailed information

concerning the steps taken by BOP and Director Marshall to reinstate the CBA and scheduled an evidentiary hearing concerning compliance.

12. On October 7, 2026, eight days after issuance of the injunction and one day after Plaintiffs' motion, BOP issued a new memorandum purporting once again to terminate its CBA with CPL-33 (the "October Retermination Memorandum"). The new memorandum purported to effect a fresh termination notwithstanding the preliminary injunction. Defendants did not seek to modify or dissolve that injunction before issuing the October Retermination Memorandum. The October Retermination Memorandum offers two purported "independent bases" for the new decision: that the CBA was not intended to function apart from Chapter 71 of Title 5 and that termination was necessary for BOP to implement national-security functions.

13. In explaining why he believed he could issue a new termination despite the injunction, Director Marshall asserted that the Court's ruling rested on the inconsistent rationales offered for the September 2025 termination and did not foreclose a new decision to terminate. On the first asserted ground, BOP reasoned that the CBA had been negotiated under Chapter 71's federal labor-management framework, from which Executive Order 14251 excluded BOP, and could not operate independently of that framework. On the second, BOP cited perceived delays and inefficiencies associated with bargaining and obstacles to management initiatives, which it contended impeded the agency's national-security and operational responsibilities. The memorandum purported to terminate the CBA immediately and stated that BOP would no longer recognize CPL-33 as the exclusive representative of bargaining-unit employees.

14. The October Retermination Memorandum did not identify a specific CBA provision that had prevented BOP from addressing a particular national-security threat or explain

why modifying particular provisions or allowing the agreement to remain in effect through May 28, 2029, would not suffice.

15. Director Marshall executed a separate October 7, 2026 memorandum titled "Rescission of Termination of Existing Collective Bargaining Agreement." That document purports to rescind the September 25, 2025 termination memorandum, the Director's contemporaneous public "Message from the Director," and other contemporaneous communications, including videos that Defendants did not produce in the Certified Administrative Record.

16. The memorandum added: "To the extent the September 25, 2025, Message from the Director, or any other subsequent communications, videos, or announcements stated or implied that the termination of the Master Agreement was not for the purposes related to Executive Order 14251, such statements or implications are hereby rescinded."

17. As of October 28, 2026, the Director's September 25, 2025 message remains publicly posted on the BOP's website and on BOP's sallyport system.

18. Defendants' purported "rescission" of these statements notwithstanding, the Director made the statements in the Message from the Director, and on information and belief, the Director still holds these views and they remain the reasons for the decision to re-terminate the CBA.

19. The Director's "rescission" does not identify any mistake in the Director's earlier statements or explain why statements he made in September 2025 do not reflect his reasons for acting.

**D. The Court Enforces Its Preliminary Injunction**

20. On October 16, 2026, this Court granted in part Plaintiffs' motion for enforcement, concluding that Defendants' attempt to terminate the CBA anew while the September 29 injunction remained in effect violated that injunction. The Court rejected Defendants' effort to implement the new termination without first obtaining judicial modification or dissolution of the existing order, declared the October 7 re-termination void, and directed that the CBA be reinstated unless and until the Court modifies or dissolves the injunction.

## CAUSES OF ACTION

### COUNT THREE
### Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) Re-termination, Arbitrary and Capricious Agency Action

21. The paragraphs above are incorporated and reasserted as if fully set forth herein.

22. The APA provides that a court "shall" "hold unlawful and set aside agency action" found to be "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A).

23. BOP's decision to re-terminate CPL-33's CBA constitutes final agency action under the APA. The challenged action is BOP's definitive decision, or policy, that the CBA and its subsidiary agreements should be terminated—not simply the particular October 7, 2026 memorandum through which BOP attempted to put that decision into effect. BOP has been working to re-terminate the CBA since no later than three days after this Court entered its preliminary injunction. On October 2, 2026, Defendants filed a "Notice of Compliance" that detailed no steps that BOP was taking to comply with the injunction, but instead stated that BOP interpreted the injunction to allow the agency to re-terminate the CBA. BOP consummated its decisionmaking process, and adopted the policy of re-terminating, no later than October 7, 2026, when it issued a re-termination memorandum that this Court later voided. On October 20, 2026,

Defendants filed a motion for clarification, modification, or dissolution of the preliminary injunction, to allow BOP to effectuate this decision and re-terminate the CBA.

24. BOP's decision to re-terminate the CBA also determines rights and obligations and carries concrete legal consequences. BOP's position, as evidenced by the attempted October 7, 2026 re-termination, is that CPL-33 will no longer be recognized as the exclusive representative of bargaining-unit employees and that BOP will cease honoring the CBA and the agreements subsidiary to it. This decision is having concrete effects on union members. BOP dragged its feet on reinstating the CBA between the Court's preliminary injunction and the first attempted re-termination, and BOP continues to drag its feet in reinstating the CBA in full, because BOP has no interest in operating under the CBA.

25. In numerous ways, BOP's decision to re-terminate CPL-33's CBA is arbitrary, capricious, and an abuse of discretion.

26. BOP's decision to re-terminate CPL-33's CBA is arbitrary and capricious because, as with the initial termination, there is a "disconnect between the decision made and the explanation given." *Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019). "The reasoned explanation requirement of administrative law . . . is meant to ensure that agencies offer genuine justifications for important decisions, reasons that can be scrutinized by courts and the interested public." *Id.* "Accepting contrived reasons would defeat the purpose of the enterprise." *Id.*

27. Director Marshall candidly admitted the reasons he wants to terminate the CBA in the Message posted the same day as the original termination. In the Director's own words, "the whole purpose of ending this contract [was] to make [employees'] lives better" because the Union purportedly had "become[] an obstacle to progress instead of a partner in it." CPL-33 simply was not "the kind of union [he] will always support."

28. The same Director Marshall made the decision to re-terminate, and there can be little doubt that he did so for the same reasons. BOP's rushed process to re-terminate—eight calendar days after this Court enjoined the original termination—confirms as much. It is implausible that in the span of those eight days, Director Marshall wiped the slate clean in his mind, evaluated whether to re-terminate afresh (including purportedly considering reliance interests of BOP employees), and then made a new decision to terminate for reasons unrelated to his strongly held reasons in terminating just last year.

29. Further evidence of continued pretext comes from the second memorandum that Director Marshall issued on October 7, 2026, which purported to rescind the incriminating admissions in the Message and other "contemporaneous communications by [his] office related to such rescission," as well as any "implications" from those materials. Purporting to "rescind" evidence of pretext and "implications" of that evidence showing pretext does not make that evidence go away; it just shows an effort to cover the pretext up. And Defendants have not even been able to bring themselves to follow through on the cover up; as of October 28, 2026, the Message still appears on BOP's public website and on BOP's sallyport system.

30. Moreover, Director Marshall has nowhere disclaimed his prior statements or motivations. BOP does not deny that those statements were made or explain why the Director's description of the "whole purpose" of the termination decision was inaccurate. The Director did not point to any intervening facts between the initial termination and attempted re-termination that would have caused him to change his reasons for acting.

31. Indeed, in some respects, the October Retermination Memorandum doubled down on the Director's public message, repeating the Director's view of purported "inefficiencies" of bargaining with CPL-33 and the desire to eliminate perceived barriers to management initiatives.

32. Because BOP provided a "contrived reason" for its re-termination of the CBA, the termination is arbitrary and capricious and an abuse of discretion.

33. Pretext aside, BOP also failed to meet the most basic requirement of reasoned decisionmaking under the APA, which is to provide a reasoned explanation for its action. BOP has not adequately explained why it was re-terminating the CBA following this Court's preliminary injunction. BOP's first stated reason is that the CBA cannot operate independently of FSLMRS, but the Court has already found that the decision to terminate is separate from the Executive Order's exclusion from statutory coverage. And BOP does not reconcile this explanation with the fact that it left the CBA to operate for months after the Executive Order removed BOP from the statute's coverage.

34. BOP's second stated reason is national security, but the memorandum leaps from the purported existence of national security responsibilities to generalized operational burdens to the conclusion that cancellation of the entire CBA—effective immediately—is necessary. BOP identifies no specific CBA term preventing BOP from safeguarding national security, and it identifies no imminent threat that would warrant termination effective immediately. Again, BOP does not reconcile its suggestion that allowing the CBA to continue for a single day more endangers national security with the fact that BOP kept the CBA in place for months after the Executive Order was issued, or that the parties have collectively bargained successfully for decades.

35. BOP thus did not offer a rational connection between any facts found and its decision, and it certainly did not provide the "satisfactory explanation" that the APA requires. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

36. BOP also failed to consider "alternatives" to its action. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020). It did not consider, for example, delaying the effective date of the re-termination or allowing the CBA to run at least through the expiration of its term, if not longer. The February 2026 OPM guidance quoted in the October Retermination Memorandum expressly contemplated "terminat[ation] or modif[ication]" as alternatives. BOP has failed to consider whether to modify the CPL-33 CBA instead of re-terminating the agreement.

37. BOP also failed to adequately consider the "serious reliance interests" of BOP employees, who rely on the CBA and the protections and procedures it provides, and of the Union itself. *Regents*, 591 U.S. at 30. In deciding to re-terminate CPL-33's CBA, BOP did not address, for example, the reliance interests of employees impacted by pending union grievances, or who face investigations in which the employee receives union representation or other support. BOP also did not address the reliance interests of employees with safety concerns that were addressed in quarterly Labor Management Meetings with the Union or through informal and formal grievance processes. BOP also did not address the reliance interests of employees and the Union in receiving timely rulings through the use of grievance processes.

**COUNT FOUR**
**First Amendment**
**Re-termination**

38. The paragraphs above are incorporated and reasserted as if fully set forth herein.

39. The First Amendment prohibits government officials from retaliating against individuals and organizations based on their protected speech or perceived First Amendment activities, including protected speech and association. The First Amendment also prohibits the

government from seeking to suppress actual or perceived speech or association based on disagreement with the speaker's viewpoint.

40. CPL-33 and Local 1661 are associations formed to advocate for federal employees at BOP facilities. Their activities include communicating with legislators and the public about correctional staffing, funding, workplace safety, pay, and agency policy, speaking against proposals they believe harmful to their members, and advocating for employees' interests.

41. The Union has, among other things, advocated before Congress against legislation supported by the Administration. Its leaders and members have sought to influence public officials and debate the policies that govern federal prisons. CPL-33 also initiated this lawsuit to enjoin and otherwise seek relief against BOP's termination of the CBA. The BOP Director was aware of, opposed to, and regarded as obstructive Plaintiffs' advocacy and the Union's efforts to represent employees.

42. The Director's "Message" posted the same day as the September 2025 CBA termination indicates that the termination reflected retaliation against, and an effort to suppress, the speech and associational activities of CPL-33 and its members. In the wake of CPL-33 advocating before Congress against legislation that the administration supported, the Director wrote that the Union's "advocating for its members" no longer advanced BOP's interests. According to the Message, Marshall terminated the CBA because the Union was "an obstacle to progress," having "slowed or prevented changes" and created "roadblocks."

43. The Director thus terminated the CBA, and has decided to re-terminate the agreement, because of the Union's perceived speech and associational activities, and the Director's effort to prevent those activities from "hold[ing] BOP back" going forward.

44. After this Court identified the Director's contemporaneous message as evidence of pretext, he purported to rescind that message and all suggestions that his previous action was for reasons other than Executive Order 14251. That maneuver did not retract any particular criticism of the Union on its merits or establish an intervening change in the Director's views. On information and belief, the Director still holds the views that he espoused in his September 2025 message.

45. The decision to re-terminate violated the First Amendment in retaliating against and seeking to suppress protected speech and associational activities.

## PRAYER FOR RELIEF

WHEREFORE, as to Counts III and IV, Plaintiffs request that this Court:

A. Declare unlawful, vacate, and set aside Defendants' unlawful final decision to re-terminate CPL-33's CBA as arbitrary and capricious, an abuse of discretion, and unlawful under the First Amendment;

B. Enter a preliminary and permanent injunction prohibiting Defendants from effectuating a re-termination of the CBA;

C. Award Plaintiffs reasonable attorneys' fees and costs; and

D. Grant such other and further relief as this Court may deem just and proper.

Dated: October 28, 2026

Respectfully submitted,

*/s/ Daniel F. Jacobson*
Daniel F. Jacobson (D.C. Bar 1016621)*
Lynn D. Eisenberg (D.C. Bar 1017511)*
Brian C. Rosen-Shaud (D.C. Bar 90042065)*
Jacobson Lawyers Group PLLC
5100 Wisconsin Ave NW, Suite 301
Washington, D.C. 20016

(301) 823-1148
dan@jacobsonlawyersgroup.com

*Admitted *pro hac vice*

By: _/s/ Logan J. Place_
Logan J. Place (ct31874)
Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.
557 Prospect Avenue, 2nd Floor
Hartford, CT 06105
(860) 233-9821
ljplace@lapmk.org

*Counsel for Plaintiffs*