**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| NATIONAL COUNCIL OF PRISON LOCALS et al., | : | No.: 3:25cv1907 (VDO) |
| Plaintiffs, | : | |
| v. | : | |
| FEDERAL BUREAU OF PRISONS et al., Defendants. | : | November 17, 2026 |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR EMERGENCY MOTION FOR MODIFICATION OR DISSOLUTION OF PRELIMINARY INJUNCTION**

Pursuant to Local Civil Rule 7(a), Defendants, the Federal Bureau of Prisons ("BOP") and William K. Marshall III, in his official capacity as Director of the BOP, hereby respectfully move to modify or to dissolve the preliminary injunction ("PI"), in whole or in part as necessary. The Court should modify or dissolve the portions of the PI that the Court's November 10, 2026, clarification order states prohibits BOP from re-terminating the collective bargaining agreement ("CBA") between the BOP and National Council of Prison Locals, American Federation of Government Employees ("CPL-33") on the basis of a fresh agency decision and explanation. Such modification or dissolution does not require BOP to re-terminate, of course, but would eliminate one legal error in the current PI that, as the Court has now clarified, prevents re-termination.

In any event, BOP has also presented a proposed new termination notice for the Court to evaluate on the merits, should that be relevant to the Court's decision to dissolve or modify the PI. *See* Declaration of Director Marshall at ¶ 3 and attachment, attached hereto as Exhibit 1. Alternatively, the Court should dissolve the PI in full because BOP has rescinded the termination of the CBA on which the preliminary injunction was based and issued a fresh agency decision and explanation on October 7, 2026, when it attempted to terminate the CBA, and has now presented

the Court with a materially identical proposed re-termination notice that will not be implemented until the Court's preliminary injunction is modified, dissolved, reversed, or stayed. *See id*. While the Court previously invalidated the October 7, 2026, re-termination, the Court did so on procedural and not substantive grounds.

The Court's September 29, 2026, Preliminary Injunction Memorandum & Order ("PI Order"), ECF No. 72, states, in part:

> The September 25, 2025, termination of the CBA is preliminarily set aside and enjoined. Defendants shall immediately reinstate the CBA for the remainder of the agreed-upon term provided in the CBA, and shall be governed by the terms of that agreement. Defendants shall also reinstate any amendments, local supplemental agreements, and memoranda of understanding that were in place subsidiary to the CBA.

Defendants originally understood the injunction to require that BOP immediately reinstate the CBA but did not understand the injunction to constrain the BOP from re-terminating the CBA in a fresh agency decision before its May 28, 2029, natural expiration. *See, e.g.,* Notice of Compliance, ECF No. 74. On November 10, 2026, the Court provided clarification, that:

> [T]he Court's decision to grant the preliminary injunction was based on the facts alleged in this case--BOP Director Marshall's statements that Plaintiffs' union was not the "kind of union" he supports and the "whole purpose of ending this contract" was because the "union [was] an obstacle to progress"--and whether termination on those bases violated the Administrative Procedure Act ("APA"). . . . There could be alternative bases to dissolve the CBA that are sufficient under the APA. But this does not likewise mean that Defendants can ignore Court orders, take unilateral action, or otherwise purport to dissolve the CBA without a proper motion to the Court and without dissolving the PI Order. . . . "The CBA shall remain in effect until either the expiration of the agreed upon term of the agreement on May 28, 2029, or until the Court grants a properly filed motion by Defendants to dissolve or clarify the PI Order to permit re-termination."

Clarification Order, ECF No. 95 (internal citations omitted).

The Court should modify or dissolve the portions of its PI Order that prohibit BOP from re-terminating the CBA on the basis of a fresh agency decision and explanation, as it would be a legal error to leave the agency without means to take a new action aimed at remedying the

explanation the court found inconsistent and inadequate in the first instance. Specifically, (1) under the principle of party presentation, the Court may adjudicate only the specific agency action Plaintiffs put at issue, *i.e.* the September 25, 2025, termination, not hypothetical future actions; (2) Article III of the Constitution prohibits advisory relief on speculative future conduct, and any new termination would involve a different record and agency rationale not before the Court; and (3) equitable relief must be narrowly tailored to the specific violation alleged, meaning the remedy can address only the challenged September 25, 2025, action, consistent with the APA's recognition that agencies may revisit decisions through new, procedurally proper actions. Alternatively, this Court should dissolve the preliminary injunction to allow the BOP to immediately implement its proposed re-termination based on a fresh agency decision, *see* Exhibit 1, while simultaneously dissolving the preliminary injunction, as the proposed termination constitutes a change in circumstances underlying the preliminary injunction, and Plaintiffs would not presently be able to demonstrate likely success on the merits of the claim the Court granted relief on with the PI Order.

Sixty days after the Court's September 29, 2026, PI Order falls on November 28, 2026, and Defendants intend to appeal that decision by that date, at least absent modification or dissolution of the preliminary injunction before that point. Once a notice of appeal is filed, this Court will lack jurisdiction to modify or dissolve the preliminary injunction absent a remand from the Second Circuit. *See, e.g., New York v. United States Dep't of Homeland Sec.,* 974 F.3d 210, 215 (2d Cir. 2020) ("The filing of a timely and sufficient notice of appeal divests the district court of jurisdiction as to any matters involved in the appeal or as to the matters covered by the notice.") (quotations omitted); *AFGE Loc. 2305 v. VA*, No. 26-1321, 2026 WL 2969474, at *4 (1st Cir. Oct. 2, 2026) (determining that the district court "likely lacked jurisdiction … to modify the preliminary injunction" against VA from terminating a collective-bargaining agreement "once the defendants

appealed that injunction"). While the Court denied expedited consideration of Defendants' October 20, 2026, Motion to Modify or Dissolve the PI Order on the basis Defendants submitted when the motion was filed, because the Court has now made clear that Defendants are prevented from terminating the CBA absent modification or dissolution of this Court's preliminary injunction order, good cause exists for expediting consideration of this motion and providing a decision by Friday, November 27, 2026.

Moreover, Defendants' motion to modify or dissolve the PI Order would have otherwise been fully briefed as of November 24, 2026 at the latest,[1] had the Court not denied it without prejudice in its entirety versus just denying the expedited request. The Court has exercised its discretion to expedite briefing with other motions in this case. *See, e.g.,* Order, ECF No. 92 (*sua sponte* requiring a response to Plaintiff's Motion to Supplement in fifteen days and Plaintiffs' reply in seven days). Once Defendants file a Notice of Appeal of the PI Order, it would divest this Court of jurisdiction to modify or dissolve the PI Order, rendering this option unavailable to Defendants to seek relief from this Court's PI order absent a remand from the Second Circuit. Defendants should not be forced to choose between appeal and the opportunity for modification or dissolution

---

[1] In their Opposition Memorandum to the Clarification Motion, Plaintiffs stated that "[i]n accordance with the Court's schedule, Plaintiffs will respond separately to Defendants' alternative requests for modification or dissolution and will explain how Defendants' actions remain contrived for all of the reasons the Court found in its preliminary injunction." *See* Opp. Memo, p. 3, ECF No. 89. Plaintiffs then moved for clarification of the Court's Order at ECF No. 85, stating they "understand that an opposition to any request to modify or dissolve the injunction will not be due until after Defendants file a new motion, but out of an abundance of caution seek clarification of whether the Court intended as much or whether Plaintiffs should file a response to the motion's request to modify or dissolve by today, under the Local Rules." Plaintiff's Clarification Motion, p. 1, ECF No. 94. Under the Local Rules, Plaintiffs' opposition would have otherwise been due on November 10, 2026, and Defendants reply would have been due no later than November 24, 2026. *See* L. Civ. R. 7. The Court clarified that "Defendants did not demonstrate good cause for expedited consideration of such a motion to dissolve a Court Order at that time. Defendants are free to again move the Court to modify or dissolve the PI Order--via proper procedural mechanisms, on the basis of new agency action--on a non-expedited basis." Clarification Order, ECF No. 95.

of the PI Order without action by the court of appeals, so there is good cause of an expedited decision.

## I. BACKGROUND

The Court is familiar with the facts of this case. To summarize, the Federal Service Labor-Management Relations Statute ("FSLMRS") authorizes the President to exempt from its coverage "*any* agency or subdivision thereof" if the President makes the determination that (A) "the agency . . . has as a primary function intelligence, counterintelligence, investigative, or national security work," and (B) the provisions of the statute "cannot be applied to that agency . . . in a manner consistent with national security requirements and considerations." 5 U.S.C. § 7103(b)(1) (emphasis added). Like most Presidents before him, on March 27, 2025, President Trump issued such an order. Specifically, in Executive Order 14,251, *Exclusions from Federal Labor-Management Relations Programs* ("the EO"), the President made the required determinations, thereby excluding from statutory coverage the identified agencies and agency subdivisions including, as relevant here, the DOJ, which includes the BOP.

On September 25, 2025, the Director of the BOP notified CPL-33 that "[a]s a result" of "the President's broad authority under 5 U.S.C § 7103(b)(l) to exempt agencies" including the DOJ—and "based on the EO [14,251]"—the BOP "no longer recognizes [CPL-33] as the exclusive representative for employees of the existing bargaining unit." ECF No. 28-5.

On November 13, 2025, Plaintiffs, CPL-33 and Local 1661, filed this action. *See* Complaint, ECF No. 1 ("Compl."). Plaintiffs advance two causes of action, both of which state they fall under the APA's "scope of review" for an agency decision. First, they argue that the BOP's ending of the CBA between the BOP and CPL-33 was arbitrary and capricious, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). Compl. ¶¶ 56–65. Second,

Plaintiffs argue that the BOP decision was in violation of the APA, 5 U.S.C. § 706(2)(B), because it represented impermissible retaliation in violation of the First Amendment. Compl. ¶¶ 66–70. For relief, Plaintiffs request that this Court enter a permanent injunction prohibiting Defendants from effectuating the termination of the CBA. *See* Compl., p. 17.

On December 22, 2025, Plaintiffs filed their preliminary injunction ("PI") motion. *See* ECF No. 28-1 ("PI Memo"). On February 13, 2026, Defendants filed a motion to dismiss. *See* ECF No. 40. On April 28, 2026, the Court denied Defendants' motion to dismiss and, on April 30, 2026, heard oral argument on Plaintiffs' PI motion. *See* ECF Nos. 54 and 56. The Court also set a deadline to produce the Certified Administrative Record ("CAR") by May 13, 2026, in accordance with its prior order and set a deadline for Plaintiffs to file a motion for supplemental discovery and briefing schedule for such a motion. *See* ECF No. 57. Defendants produced the CAR on May 13, 2026, *see* ECF No. 59, and filed an answer on July 8, 2026. *See* ECF No. 69.

On September 29, 2026, the Court granted Plaintiff's PI motion. *See* Order, ECF No. 72. In the PI Order, the Court found the BOP Director's termination letter and public message were contradictory and, "[a]lthough an agency may have multiple reasons for its action, it cannot offer an entirely pretextual explanation that is undermined by its own contradictory assertions made the same day." *Id.*, p. 26. As such, the Court concluded that "Plaintiffs are likely to succeed on their claim that Defendants' decision to terminate the CBA was arbitrary and capricious in violation of the APA." *Id.*, p. 27. The Court also found Plaintiffs demonstrated that they will suffer irreparable harm that could not otherwise be remedied in the absence of a preliminary injunction and that the balance of the equities and the public interest also weigh in favor of granting a preliminary injunction. *Id.*, pp. 27-30. In granting the preliminary injunction, the Court concluded with an order that "Defendants shall immediately reinstate the CBA, as well as any amendments, local

supplemental agreements, and memoranda of understanding that were in place subsidiary to the CBA, for the remainder of the agreed-upon term provided in the CBA." *Id*., p. 32. Earlier in its PI Order, the Court also stated that "Defendants shall immediately reinstate the CBA for the remainder of the agreed-upon term provided in the CBA, and shall be governed by the terms of that agreement." *Id*., p. 2.

On October 2, 2026, Defendants filed a Notice of Compliance. *See* Notice, ECF No. 74. The Defendants made clear in the Notice "that they did not understand the Court's order to: (1) preclude the BOP from re-terminating the CBA in a fresh decision before the end of the CBA's term; or (2) mean that the Court intends to supervise every instance in which the BOP is alleged to have violated the CBA." *Id.*; *see also* Enforcement Order, pp. 2-3. Plaintiffs did not respond directly to the Notice of Compliance. On October 6, 2026, Plaintiffs filed a Motion for Contempt or Alternatively to Enforce. *See* Enforcement Motion, ECF No. 75. Plaintiffs then supplemented the Motion on October 7, 2026, with a Notice informing the Court that, after filing the Motion, Plaintiffs' counsel learned that Defendants had approved some official time requests, approved a request for union space, and granted approval for union representation at a committee meeting. *See* ECF No. 78; *see also* Enforcement Order, p. 4.

On October 7, 2026, Director Marshall issued a memorandum to CPL33 President White (the "Rescission Memorandum"), rescinding the Message from the Director issued on September 25, 2025, as well as the September 25, 2025, memorandum terminating the CBA. *See* Supplemental Hemingway Dec., ECF No. 79-1 ¶12 and Ex. A to Hemingway Dec., ECF No. 79-2. Also on October 7, 2026, Director Marshall issued another memorandum to President White terminating the existing CBA. *See* Ex. B. to Supplemental Hemingway Dec., ECF No. 79-3 at 1.

The Court held oral argument on the Enforcement Motion on October 13, 2026. *See* ECF No. 82. The Court then issued the Enforcement Order on October 16, 2026, and denied Plaintiffs' motion to the extent it sought to hold Defendants in contempt. The Court's Enforcement Order, in relevant part, voided Defendants' attempted re-termination of the CBA and directed that Defendants must have a properly filed motion to clarify, modify, or dissolve the PI Order granted first—otherwise the CBA remains in effect until the natural expiration. *See* Enforcement Order, p. 10, ECF No. 84.

On October 21, 2026, Defendants filed an Emergency Motion on the Court's PI Order or, alternatively, for modification or dissolution of Preliminary Injunction. *See* ECF No. 85. On October 21, 2026, the Court issued an order stating that it would consider clarification of its PI Order on an expedited basis as Defendants "have good cause to ensure that they are fully compliant with this Court's orders, while they simultaneously attempt to follow executive orders in a timely manner." *See* ECF No. 87.

On November 10, 2026, the Court issued its order on clarification of the PI, finding in relevant part, that "the Court did not suggest that the CBA could never be dissolved prior to its end-date. . . . There could be alternative bases to dissolve the CBA that are sufficient under the APA. But this does not likewise mean that Defendants can ignore Court orders, take unilateral action, or otherwise purport to dissolve the CBA without a proper motion to the Court and without dissolving the PI Order." Clarification Order, ECF No. 95. The Clarification Order directed that "Defendants are free to again move the Court to modify or dissolve the PI Order--via proper procedural mechanisms, on the basis of new agency action--on a non-expedited basis." *Id.*

## II. STANDARD OF REVIEW

"An injunction is an ambulatory remedy that marches along according to the nature of the proceeding. It is executory and subject to adaption as events may shape the need, except where rights are fully accrued or facts are so nearly permanent as to be substantially impervious to change." *Sierra Club v. U.S. Army Corps of En'rs*, 732 F.2d 253, 256 (2d Cir. 1984). "The decision whether to modify a preliminary injunction involves an exercise of the same discretion that a court employs in an initial decision to grant or deny a preliminary injunction." *Weight Watchers Intern., Inc. v. Luigino's, Inc.*, 423 F.3d 137, 141 (2d Cir. 2005) (citing *Sierra Club* 732 F.2d at 256); *see also Dist. Attorney of New York Cty. v. Republic of Phil.*, 681 F. App'x 37, 41 (2d Cir. 2016) (summary order) (explaining that "[t]he same standard applies to modification of an injunction" as to the initial granting of a preliminary injunction) (citation omitted); *Biediger v. Quinnipiac Univ.,* 928 F. Supp. 2d 414, 433 (D. Conn. 2013) (standard applies for both a decision to modify or dissolve the preliminary injunction); *Nielsen Consumer LLC v. Circana Grp., L.P.*, No. 22cv3235, 2026 WL 160982, at *2 (S.D.N.Y. Jan. 21, 2026) (same). "A court abuses its discretion where it applies an incorrect legal standard or bases its ruling on clearly erroneous findings of fact." *Id.* (quotations omitted); *see also Villiers v. Decker*, 31 F.4th 825, 831 (2d Cir. 2022).

In the Second Circuit, the burden on a party seeking to modify a preliminary injunction is unclear, *accord King Spider LLC v. Panda (Hong Kong) Tech. Co.*, No. 24cv2668, 2025 WL 89123, at *3 (S.D.N.Y. Jan. 14, 2025), but some courts have found that "[a] party seeking relief bears the burden of establishing that there has been a change of circumstances that warrants relief." *S.E.C. v. Illarramendi*, No. 3:11cv78 (JBA), 2014 WL 545720, at *3 (D. Conn. Feb. 10, 2014) (citing *Horne v. Flores,* 557 U.S. 433, 447 (2009) ("[Under Fed. R. Civ. P. 60(b)(5)] the party seeking relief bears the burden of establishing that changed circumstances warrant relief.")

(internal citations omitted); *see also City of New York v. Lopez*, No. 21cv7862, 2025 WL 1638033, at *2 (S.D.N.Y. June 10, 2025) (noting that "[a]s a general matter, decisions resolving aspects of a case may not usually be changed unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice."). And modification or termination of a preliminary injunction is appropriate in APA cases where an Agency has the opportunity to address and remediate concerns identified by the Court. *See, e.g., New York v. Trump*, 778 F. Supp. 3d 578, 591 (S.D.N.Y. 2025) ("[I]nvit[ing] the Government to promptly move to modify or terminate the preliminary injunction once Defendants had an opportunity to address and remediate the procedural concerns identified by the Court.").

## III. ARGUMENT

### A. The Court should modify or dissolve its Order to the extent it prohibits re-termination based on a fresh agency decision.

In its PI Order, the Court recognized that Plaintiffs were asking the Court to adjudicate only "BOP's decision to terminate the CBA." *See* PI Order, p. 2, ECF No. 72; Clarification Order, ECF No. 95 ("The Court's decision to grant the preliminary injunction was based on the facts alleged in this case--BOP Director Marshall's statements that Plaintiffs' union was not the 'kind of union' he supports and the 'whole purpose of ending this contract' was because the 'union [was] an obstacle to progress'--and whether termination on those bases violated the Administrative Procedure Act ('APA')") (quoting PI Order, pp. 1-2, ECF No. 72). Specifically, the Court appreciated that "[t]his case does not concern the validity of EO 14,251—that litigation is ongoing elsewhere throughout the nation." *Id.* Appropriately focused on the challenged action before it, the Court did not conclude that the BOP could not articulate a lawful basis upon which to terminate the CBA during the remainder of its term (*i.e.*, until May 28, 2029). *See* Clarification Order, ECF No. 95 ("[T]he Court did not suggest that the CBA could never be dissolved prior to its end-date.

The Court's PI Order was instead based on the narrow facts before it. There could be alternative bases to dissolve the CBA that are sufficient under the APA."). Thus, while the Court appears to appreciate the CBA could be dissolved prior to its end-date on alternative bases that are sufficient under the APA, as it stands, the PI Order nonetheless prohibits BOP from doing so (unless modified or dissolved).

An injunction prohibiting a future termination based on a different record and new agency explanation would be improper. The only agency action the Plaintiffs challenge in this suit is Defendants' September 25, 2025, termination of the CBA. *See* PI Motion, ECF No. 28-7 (Proposed Order that "the Court GRANTS Plaintiffs' Motion and STAYS and PRELIMINARY SETS ASIDE the September 25, 2025 termination of the CBA and PRELIMINARILY ENJOINS Defendants from effectuating the September 25, 2025 CBA termination.") (emphasis in original).[2] Granting Plaintiffs relief from any speculative future agency actions would go beyond the relief

---

[2] At the Enforcement Hearing, the Court also noted Plaintiffs' counsel did not argue that if the Court granted the PI Motion that re-termination would be prohibited based on the PI Order Plaintiffs were requesting from the Court:

> THE COURT: . . . I recall when I was reading the transcripts of the oral argument [on the PI Motion] and the colloquy I had with Attorney Jacobson, there was nothing in his response that led me to believe that re-termination required permission from the Court, as opposed to perhaps what I expect we'll hear from the defendants, which is actual compliance with the intent of Congress and the President and the executive order instead of particular anti-union issues as to this particular union on the part of the director which the Court found. . . . Let's assume that we all agree that the better practice is to seek a motion to dissolve or modify the preliminary injunction, and I'm not certain that's the Court's position. It's very likely not, but let's assume we agree that coming in and saying we think we've complied, here is our proposed basis for re-terminating, why isn't that -- well, what short of that, why isn't ECF 74, notice of compliance with the pretrial order, sufficient? It reads, in relevant part, that two bullet points, for lack of a better phrase from the Court, is, a, we don't read the Court's order to prevent us from re-terminating -- here we are.

Enforcement Mot. Tr., pp. 27-29.

Plaintiffs sought in their complaint and preliminary-injunction motion, and run counter to the rule that Plaintiffs "frame the issues" and "courts call balls and strikes; they don't get a turn at bat." *Clark v. Sweeney*, 607 U.S. 7, 9 (2025) (citations omitted). Article III also independently bars advisory relief concerning speculative future conduct. The Constitution limits federal courts' jurisdiction to "cases" and "controversies." U.S. Const., art. III, § 2. As the Supreme Court has repeatedly emphasized, that limitation requires "a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." *Carney v. Adams*, 592 U.S. 53, 58 (2020); *accord Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 397 (2024) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.").

In the instant case, the question and controversy before the Court is this: did Defendants' termination of the CBA on September 25, 2025, violate the APA. *See* Order, p. 2, ECF No. 72. Based on the record before the Court, the Court ruled that the answer is likely "yes." *Id.* at 2, 26-27. Termination of the CBA on a different basis would require adjudication based on a different record—one not before the Court. And a court's review of an agency's decision is generally limited "to the administrative record compiled by that agency *when it made the decision*." *See Nat'l Audubon Soc. v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997) (emphasis added); *see also Kakar v. U.S. Citizenship & Immigr. Servs.*, 29 F.4th 129, 132 (2d Cir. 2022) (Courts reviewing agency actions under the APA are typically "limited to examining the administrative record to determine whether the agency decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.") (quoting *Nat. Res. Def. Council, Inc. v. Muszynski*, 268 F.3d 91, 97 (2d Cir. 2001)).

The October 2026 recission of the prior termination and messaging, and attempted re-termination of the CBA based on a fresh agency decision, addressed the Court's prior concerns with the September 2025 termination, and specifically explained that to the extent the Director's September 2025 message (or any other communication) stated or implied that the termination of the CBA was not for the purposes related to Executive Order 14,251, such statements or implications were rescinded. *See* Supplemental Hemingway Dec., ECF No. 79-1 ¶12 and Ex. A to Hemingway Dec., ECF No. 79-2. The proposed termination that is materially identical to the October 2026 decision and attempted re-termination addresses the same concerns. *See* Exhibit 1.

The proposed termination also includes a thorough analysis of the impact of collective bargaining on BOP's ability to execute its national security mission. *See id*. It also reasons that because the FSLMRS no longer applies to the BOP pursuant to Executive Order 14,251, the BOP has no ongoing statutory obligation to bargain, to recognize AFGE or CPL-33 as exclusive representatives, or to remain bound by CBAs previously negotiated under the FSLMRS. *See id.* Based on the record and reasoning associated with the BOP Director's new determination, this Court's prior preliminary conclusions regarding the September 2025 termination would not apply to a fresh agency decision, like the proposed termination attached at Exhibit 1. To determine likelihood of success on the merits of any renewed claim challenging the BOP Director's new determination, this Court would need to evaluate the rationale presented in the new document and its supporting administrative record, much of which addresses the prior concerns noted in the injunction order.

It is also axiomatic that equitable relief must be narrowly tailored to remedy the harm alleged. *See Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025) ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.") (quoting

*Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (emphasis omitted); *see also Soc'y for Good Will to Retarded Child., Inc. v. Cuomo,* 737 F.2d 1239, 1251 (2d Cir. 1984) ("Injunctive relief should be narrowly tailored to fit the specific legal violations adjudged."). As discussed *supra*, the only action the Plaintiffs' complaint challenges, and that they requested a preliminary-injunction setting aside, is Defendants' September 25, 2025, termination of the CBA, and therefore the relief must be tailored to that particular agency action. Indeed, the APA remedy of vacatur contemplates that the BOP "can 'deal with the problem afresh' by taking *new* agency action. An agency taking this route is not limited to its prior reasons but must comply with the procedural requirements for new agency action.'" *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 21 (2020) (citation omitted).[3]

As the Court's PI Order, as clarified, presently prohibits re-termination of the CBA in a fresh decision before its May 28, 2029 natural expiration, it is improper because it provides Plaintiffs with greater relief than is necessary to make them whole. *See CASA, Inc.*, 606 U.S. at

[3] It also bears noting that Defendants respectfully disagree with the Court's PI Order and maintain, as they have throughout this litigation, that in light of the President's exclusion of the Bureau of Prisons from the FSLMRS, the CBA became inoperable and the BOP Director's termination was therefore designed to implement a binding legal directive that left BOP with some discretion in the timing of CBA termination but without the power to second-guess the President's underlying determination that collective bargaining should not continue at BOP. *See* ECF No. 41, pp. 27, 34 (Omnibus Mot. and Resp. to PI Motion) ("Given the President's determinations . . . that the DOJ should not be subject to the requirements of the FSLMRS. . . . [T]he EO made all the necessary considerations and determinations and left no decision-making flexibility to the BOP."); ECF No. 51, p. 5, 7-8 (Reply Br.) ("[I]f an agency is exempted from the FSLMRS and there is no exclusive representation by a union there can be no CBA—it is abrogated. . . . The President's determination left no room for BOP to make an independent call on ending the CBA, and Plaintiffs' arguments mischaracterize . . . the independent follow-on effect of removal of FSLMRS coverage."); PI Mot. Hearing Tr. pp. 35-43, 58 (["P]laintiffs' position conflates substantive policy discretion which belonged to the President with discretion over agency timing and implementation of the President's binding order."). Even though it is undisputed in this case that BOP employees are excluded from the FSLMRS by virtue of Executive Order 14,251, the Court's PI order effectively forces the BOP to continue to cover those employees under the FSLMRS under a zombie-like agreement that is otherwise inoperable and overrides the President's determination that the FSLMRS cannot be applied BOP employees in a manner consistent with national security requirements.

852 (2025); *see also Kane v. De Blasio,* 19 F.4th 152, 173 (2d Cir. 2021) ("[A]s a general rule, injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.") (quotations omitted; cleaned up); *Texas v. United States*, 126 F.4th 392, 420 (5th Cir. 2025) ("[E]quitable remedies such as injunctions should not provide more relief than necessary to give the prevailing party the relief to which it is entitled.") (quotations omitted; cleaned up). Indeed, Defendants already restored the CBA which, under the original contract will otherwise remain operative through its agreed-upon expiration date of May 28, 2029—the same contractual posture that existed on September 24, 2025.

As such, the Court should modify or dissolve the portions of the PI that the Court's November 10, 2026 clarification order states prohibit BOP from re-terminating of the CBA on the basis of a fresh agency decision and explanation. Such modification or dissolution does not require BOP to re-terminate, of course, but would eliminate one legal error in the current PI that, as the Court has now clarified, prevents re-termination. The Court can exercise the same discretion that it employed when granting the preliminary injunction. *See Weight Watchers Intern., Inc.*, 423 F.3d at 141. For all the reasons outlined above, it would be a legal error to leave the agency without means to take a new action aimed at remedying the explanation the court found inconsistent and inadequate in the first instance. *See Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 999 (2d Cir. 1997) (A "court abuses its discretion only if it applies an incorrect legal standard, bases the preliminary injunction on a clearly erroneous finding of fact, or issues an injunction that contains an error in its form or substance.") (citation omitted); *see also Lopez*, 2025 WL 1638033, at *2. Modifying the preliminary injunction to correct this error would therefore be appropriate. *See id.*

**B. Director's Marshall's proposed re-termination is meaningfully different from the September 25, 2025, termination—a change in circumstances—and renders the Court's reasoning under the APA in the PI Order inapplicable.**

Alternatively, based on the record and reasoning associated with the BOP Director's new determination and recission of the September 2025 determination, this Court's prior preliminary conclusions regarding the September 2025 termination would not apply to the proposed newly-explained decision by the agency. *See* Exhibit 1. The proposed termination at Exhibit 1 is a fresh agency decision and explanation materially identical to the attempted re-termination notice on October 7, 2026, that will be implemented when the Court's preliminary injunction is modified, dissolved, reversed, or stayed. This proposed newly-explained decision constitutes a change in circumstances underlying the preliminary injunction and warrants its dissolution in full.

In the Court's PI Order, it found the BOP Director's original termination letter and public message were contradictory and, "[a]lthough an agency may have multiple reasons for its action, it cannot offer an entirely pretextual explanation that is undermined by its own contradictory assertions made the same day." *Id.*, p. 26; *see also* Clarification Order, ECF No. 95. As such, the Court concluded that "Plaintiffs are likely to succeed on their claim that Defendants' decision to terminate the CBA was arbitrary and capricious in violation of the APA." *Id.*, p. 27.

As outlined above, the proposed newly-explained decision addresses the Court's prior concerns with the September 2025 termination. The Rescission Memorandum also explains that to the extent the Director's September 2025 message (or any other communication) stated or implied that the termination of the CBA was not for the purposes related to Executive Order 14,251, such statements or implications were rescinded. *See* Supplemental Hemingway Dec., ECF No. 79-1 ¶12 and Ex. A to Hemingway Dec., ECF No. 79-2. The proposed newly-explained decision also includes a thorough analysis of the impact of collective bargaining on BOP's ability

to execute its national security mission. *See* Exhibit 1. The proposed newly-explained decision also reasons that because the FSLMRS no longer applies to the BOP pursuant to Executive Order 14,251, the BOP has no ongoing statutory obligation to bargain, to recognize AFGE or CPL-33 as exclusive representatives, or to remain bound by CBAs previously negotiated under the FSLMRS. *Id.* Based on the record and reasoning associated with the BOP Director's new determination, this Court's prior preliminary conclusions regarding the September 2025 termination would not apply to the agency's proposed newly-explained decision. To determine likelihood of success on the merits of any renewed claim challenging the BOP Director's new determination, this Court would need to evaluate the rationale presented in the new document and its supporting administrative record, much of which addresses the prior concerns noted in the injunction order.

Accordingly, the preliminary injunction should not continue on the basis of this Court's past findings about the September 2025 termination, as the proposed newly-explained decision is based on a fresh and independent analysis informed by an expanded factual record. In short, the proposed newly-explained decision is a separate and distinct agency decision that stands apart from the prior September 2025 determination. The Court's September 2026 PI Order's reasoning does not account for the additional considerations underlying the BOP Director's proposed newly-explained decision, and continuing to prospectively maintain a preliminary injunction based on the prior determination "is no longer equitable." Fed. R. Civ. P. 60(b)(5). The Court should therefore dissolve its September 2026 PI Order and permit the BOP to implement the proposed newly-explained decision immediately upon the Court's granting of its motion to dissolve the PI. To the extent a new PI motion may be filed regarding such a re-termination, the Court should take up any such motion in due course.

## IV. CONCLUSION

The Court should modify or dissolve the portions of the PI that the Court's November 10, 2026, clarification states prohibit BOP from re-terminating the CBA between the BOP and CPL-33 on the basis of a fresh agency decision and explanation. Such modification or dissolution would eliminate a legal error in the current PI that, as the Court has now clarified, prevents re-termination. Alternatively, the Court should dissolve the PI in full because BOP has rescinded the termination of the CBA on which the preliminary injunction was based and issued a fresh agency decision and explanation on October 7, 2026, when it attempted to terminate the CBA, and has now presented the Court with a materially identical proposed re-termination notice that will not be implemented until the Court's preliminary injunction is modified, dissolved, reversed, or stayed.

Respectfully submitted,

THE FEDERAL BUEARU OF PRISONS;
and WILLIAM K. MARSHALL III, in his
official capacity as Director of the BOP

By their attorneys

DAVID X. SULLIVAN
United States Attorney

/s/
J. Brian Meskill (ct29611)
Assistant United States Attorney
450 Main Street, Rm. 328
Hartford, CT 06103
Tel.: 860-947-1101
Fax: (860) 760-7979
Email: Brian.Meskill@usdoj.gov

JONATHAN D. GUYNN
Acting Assistant Attorney General

Tyler J. Becker (VA Bar No. 97636)
Counsel to the Assistant Attorney General
Office Of The Assistant Attorney General,
Civil Division
950 Pennsylvania Ave Nw, Rm. 3614
Washington, DC 20530
Tel: 202-514-4052
Email:Tyler.Becker@usdoj.Gov

Jeremy Mauritzen (CA Bar 354615)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 598-7315
Email: Jeremy.Mauritzen@usdoj.gov